PETITION OF WAUSAU INVESTMENT COMPANY and others.

*December 11, 1915—May 23, 1916.*

*Taxation: Exemptions: Lands acquired by the state: Prior tax liens: Enforcement: When taxes are "levied:" Assessment roll, when completed: Constitutional law: Political questions: Actions against state.*

1. Under sec. 1038, Stats., property owned exclusively by the state is exempt from taxation; but tax liens which have already accrued at the time the state becomes the owner do not thereupon cease to exist.
2. In sec. 1034, Stats.—providing that "taxes shall be levied upon all property in this state except such as is exempted therefrom,"—the word "levy" is not used in its strict sense.
3. Under our statutes the assessment roll is to be deemed completed, except for the correction of mistakes and clerical errors, on the

first Monday in August when, under sec. 1064, it is to be delivered to the clerk for filing; and .the subsequent levy of taxes must be considered as relating back to said date.

4. Lands deeded to the state prior to the first Monday in August in any year are exempt from taxation for that year, but lands of which the state becomes owner after that date are not exempt for that year.

5. The question as to how, if at. all, valid tax liens upon lands to which the state has acquired· title shall be enforced as against the state is one which the legislature ought first to consider and pass upon, and it is therefore, in this case (involving lands purchased ·under the forest reserve legislation), left undecided until the legislature shall have had an opportunity to determine what the policy of the state should be.

6. The state cannot be sued without its consent; and sec. 3200, Stats., does not apply to equitable claims, such as the. claim that the state should redeem lands acquired by it from sales thereof for taxes levied prior to such acquisition.

APPLICATION in the action of *State ex rel. Owen v. Donald* (160 Wis. 21, 151 N. W. 331). *Continued.*

The facts are stated in the opinion.

For the petitioners there was a brief by *Edgar & Johnson* and *Amos Radcliffe,* and oral argument by *C. T. Edgar.*

On behalf of *R. B. Tweedy* there was a brief by *Goggins & Brazeau,* and oral argument by *B. R. Goggins.*

On behalf of *Vilas County* there was a brief by *C. H. Weigand,* district attorney, and *Curtis, Van Doren & Cole,* of counsel, and oral argument by *George Curtis, Jr.*

For the *State* there was a brief by the *Attorney General* and *Winfield W. Gilman,* assistant attorney general, and oral argument by *Mr. Gilman.*

WINSLOW, C. J.    This proceeding is an application to the court in the action of *State ex rel. Owen v. Donald* (160 Wis. 21, 151 N. W. 331), made by the *Wausau Investment Company,* the *Wisconsin Realty Company,* and *F. I. Carpenter,* holders of certificates of tax sale upon lands in *Vilas County* purchased by the state for forestry purposes and involved in

the action aforesaid (hereinafter referred to as the forestry action), asking that an order be made in that action requiring the state to redeem said tax certificates out of state funds with interest at fifteen per cent. per annum or that such other order be made with relation to the redemption of said certificates as may be equitable. Upon the filing of this petition, it appearing to the court that other persons and corporations held tax certificates upon certain of the lands involved in said forestry action and were in similar situation, it was ordered that all of such persons and corporations be made parties to the proceedings and that they be required to appear and exhibit their claims. At the same time it was ordered that the state and *Vilas County* be required to appear and make answer to the petition. Pursuant to this order the state and *Vilas County* appeared and filed answers and the other holders of tax certificates on said lands also appeared and submitted their claims to the court, without, however, waiving their claims against *Vilas County* therefor. On the part of the state the principal contention was that the lands were exempt from taxation because exclusively owned by the state and hence that the state should not be required to redeem. On the part of *Vilas County* it was claimed that on equitable principles the tax certificates should be redeemed either by the state or by the vendors of the lands.

There was no substantial dispute as to the facts and the matter was submitted upon the allegations of the petition and the various answers. In view of the conclusions which we have reached it is not deemed necessary now to attempt to make an itemized or detailed statement of the facts as to the claims made by the various petitioners, but only to state in a general way the fundamental facts essential to an understanding of the legal questions which are raised and now decided.

At various dates between the 1st day of April, 1908, and the 31st day of July, 1912, the state in form purchased from various lumbering corporations more than 90,000 acres of cut-

over lands for forestry purposes.  The purchases were gener-
ally, if not universally, made in the form of land contracts,
payment to be made in instalments in the future, as was the
case with the lands purchased of the G. F. Sanborn Company
which were directly involved in the forestry case.  The San-
born contract covers more than 25,000 acres of land.  It was
dated June 1, 1911, and at the time of the commencement of
the forestry action all of the purchase price except the last in-
stalment of $20,000 had been paid.  That action was brought
to compel the payment of this last instalment, but this court
held the contract void on various grounds not necessary to be
related here.  The court also held in that decision that, not-
withstanding the invalidity of the contract in question and
all other contracts of like nature, the state possessed an equi-
table lien on the lands covered by the contracts for the money
already paid thereon.  By administrative orders since that
decree, claims have been allowed and ordered to be audited
and paid for the respective balances remaining unpaid on the
Sanborn contract and on other similar contracts to protect the
lien of the state upon the lands covered by the contract and
deeds have been received by the state for such lands so paid
for.  So, notwithstanding the invalidity of the contracts as
state obligations, the lands covered by them have largely
come into the possession and ownership of the state.  The
forestry law provided for the taxation of the so-called forestry
lands and for the payment of the taxes so assessed out of the
general funds of the state; it also contained a number of spe-
cial provisions restricting the powers of counties north of
town 33 with regard to the taking of tax deeds upon lands.
All of these provisions were held invalid by the decision in
the forestry case.

It appears by the petition and answers which are now be-
fore us that there are outstanding tax certificates held by the
various petitioners and respondents who have appeared in
this proceeding to the amount of nearly $8,000 upon the lands

covered by the various contracts, the certificates having been issued upon the tax sales of 1912 to 1915 inclusive.

The fact appears that the greater part of the land covered by the certificates (if not all of it) is now owned by the state in fee.

Sec. 1038, Stats., provides that property owned exclusively by the United States or by this state shall be exempt from taxation. The broad claim is made on behalf of the state, under this provision, that the instant the state becomes the owner of any property the tax laws cease to affect that property no matter what stage the process of taxation may have reached, or, in other words, that if the state becomes the owner at any time before a tax deed is executed the tax becomes void. On the other hand it is claimed by *Vilas County* that the lands involved here never became the property of the state until the entry of the decree in the present action (February, 1915) and that such title did not relate back to the inception of the void contracts, consequently that the lands were not exempt from taxation when the various taxes in question were levied, and that, as between the county and the state, the state should equitably be required to redeem the tax certificates.

On behalf of the state it is suggested further that there are no funds from which any state officer is authorized to take the money to make these redemptions. On the major contention made by the state, reliance is placed on the case of *Gasaway v. Seattle,* 52 Wash. 444, 100 Pac. 991, 21 L. R. A. N. S. 68, in which it was held that under the laws of Washington where a city condemns land for public use it will obtain title free from existing tax liens. It is not necessary either to affirm or disaffirm the doctrine of that case here. Doubtless the state by virtue of its sovereign power (which of course includes complete control over taxation proceedings) could expressly or impliedly provide that all tax liens should cease upon the acquisition of the property by the state or by a municipality. We do not, however, discover any such intention

here.   Our statute (sec. 1034) provides that "Taxes shall be levied upon all property in this state except such as is exempted therefrom," and then, in sec. 1038, names forty-one classes of property which are exempt, the first class being "that owned exclusively by the United States or by this state;" after this class follow the other classes, including municipal property, church and educational property, and many other kinds.   Now we apprehend that no one would seriously contend that if real estate were acquired by a church or an educational institution after a tax lien had accrued thereon but before the issuance of a deed the lien would cease to exist, and yet property so acquired is made exempt by precisely the same provision as that governing the exemption of property acquired by the state.   The direction of the statute is to levy taxes upon all property except that which is exempt.   The question then is, When is the levy made so that a transfer thereafter does not affect the tax lien?   The word "levy" here cannot, we think, be used in its strict sense.   The local assessment rolls are completed (subject only to the correction of clerical errors) months before the levy of the tax by the county board in November, and the town clerk must, "upon a uniform percentage, calculate and carry out in one item opposite to each valuation in the tax roll" the amount necessary to raise the taxes levied for all purposes (sec. 1079, Stats.). If during the time between the final closing of the assessment roll and the formal levy by the county board great blocks of land like those involved in the present case could be taken from the taxable property of the town by transferring them to an exempt class, it is evident that great confusion and embarrassment would result in the transaction of the town business.   The tax must be apportioned to the property listed on the completed roll, and the roll is completed, except for the correction of clerical errors, in the month of August; hence, if property can escape taxation by passing into the exempt class after completion of the roll, there would necessarily re-

sult in every such case a deficiency in the revenues of the town for that year. We do not think there was any legislative intention of this nature.

This court has not met the question before. It is true that in *Wis. Cent. R. Co. v. Lincoln Co.* 57 Wis. 137, 15 N. W. 121, it is said that lands are properly assessable if "subject to taxation at any time before the fourth Monday in June . . . , otherwise not," but the question of the exact date was not necessary to the decision in that case.

The conclusion that we now reach from examination of the taxation statutes is that the law contemplates that the assessment roll is to be completed, except for the correction of mistakes and clerical errors, on the first Monday in August when the assessor delivers the assessment roll to the town clerk for filing and preservation in his office. Sec. 1064, Stats. The assessor is required to begin the preparation of the roll on the 1st day of May. Personal property (with certain exceptions) must be assessed as of that date and no change of location or ownership thereafter affects the assessment thereof, but real property may be assessed at any time between that date and the sitting of the board of review. Sec. 1033 and sub. 8, sec. 1040. The board of review is required to sit on the last Monday of June and the assessor lays the roll before the board. Secs. 1060, 1061. This board has very complete power to hear complaints, take testimony, raise or lower assessments, correct errors, place omitted property on the roll, and in fact fully to complete the same. The statute fixes no date upon which real property is to be assessed, and in view of the very extensive powers of the board of review over the roll and the fact that it is in no sense a completed document until the board finishes its labors, we conclude that if real estate passes from the taxable class to the exempt class, or *vice versa,* at any time prior to the first Monday in August, when the roll is completed, verified by the assessor, and filed with the town clerk, it would be the duty of the board to change

the roll by striking out or adding such real estate, as the case may be. No changes in the roll are authorized to be made thereafter except such as are necessary to correct mere errors or mistakes. The inclusion therein of property then subject to taxation cannot be called an error or mistake. When the annual taxes are thereafter levied they are necessarily levied on the property *rightly* included in the roll on the first Monday in August and hence the levy must be considered as relating back to that date.

Lands which had been deeded to the state prior to the first Monday in August in any year were unquestionably owned exclusively by the state and exempt from taxation for that year, and this is so even if such lands were incumbered by a mortgage or purchase-money lien. On the other hand, lands which were not deeded to the state at that date, but were simply included in one of the void contracts of sale, were not exclusively owned by the state and cannot be held to be exempt from taxation for that year. It follows that when the state thereafter obtained title in fee to such lands the tax liens thereon were not extinguished.

These conclusions, however, do not dispose of the most serious questions presented to us in this proceeding.

If it be granted that the state took title to such lands subject to the tax lien, the question as to how that lien can be enforced as against the state, if indeed it can be enforced at all, is not easy of solution.

Can the certificate holder compel the state to execute a tax deed upon its own lands, or can he maintain an action against the state to foreclose the lien? The state cannot be sued without its own consent, and sec. 3200, Stats., authorizing action against the state where the claim has been presented to and disallowed by the legislature, applies only to claims which, if valid, render the state a debtor, and not to equitable claims or claims for tort. *Chicago, M. & St. P. R. Co. v. State,* 53

Wis. 509, 10 N. W. 560; *Houston v. State,* 98 Wis. 481, 74 N. W. 111.

It seems to us that the question what the state should do with reference to the tax liens which, under the principles hereinbefore announced, are valid liens, is pre-eminently a question which the legislative branch of the state government ought first to consider and pass upon. We have therefore concluded to make no final disposition of this proceeding at the present time. The principles of law hereinbefore announced are deemed to be finally settled in the case, but the proceeding itself will be continued and action on the part of all the tax certificate holders looking towards enforcement of their certificates in any court enjoined until the further order of the court and until such time in the year 1917 as the legislature shall have opportunity to consider the situation and determine what the policy of the state ought to be in view of the facts and the law.

It will be necessary also for the information of the court as well as of the legislature that all the facts regarding the tax certificates in question be ascertained and tabulated so that the exact situation may be known in regard to every certificate, not only as to the ownership, amount, and date thereof, but also as to the specific parcel covered by it and the condition of the title to such parcel at the time of the levy of the tax represented thereby. A reference to ascertain these facts and any other facts deemed material to the questions at issue will be ordered by the court.

*By the Court.*—Ordered that this proceeding be continued until further order of the court, and that all certificate holders who are parties to this proceeding be enjoined in the meantime from taking action to enforce their certificates in any court or tribunal.