## PLANTERS WAREHOUSE COMPANY *v.* SIMPSON *et al.*

1. Taxes are to be paid before any other debt, lien, or claim whatsoever; and property returned for taxation, or held at the time of giving it in for taxation, or after, is always subject. A sale of property under any other process does not divest the lien of the State for taxes. Where an execution upon a common-law judgment and tax executions were levied upon the same property, and sales of the property were advertised at the same time, but the sale under the tax executions was not made, but the same was sold under the levy of the common-law execution, the tax executions being placed in the hands of the sheriff with instructions by the tax-collector to collect them from the proceeds of the sale, and where the property was bid in by the plaintiff in the common-law execution, and the sheriff executed to such purchaser a deed to the property without requiring the purchaser to pay over to him the amount of the purchase-money, or a sufficient amount thereof to satisfy the tax executions, the purchaser promising to pay the sheriff the amount of the tax executions, which was not done, the sale of the property so levied upon and sold under the' common-law execution did not divest the liens of the tax executions, for the reason that the equity of the vendors, who had to take back their lands from which the vendee had received the profits, is superior to that of the holder of the lands to which the taxpayer had the legal title and to which the tax liens had attached before such holder and the bank under ·which it claimed had acquired title.

2. A sale is a transfer of the absolute or general property in the thing for money or something of value. It is a transmutation of property from one man to another, in consideration of some price or recompense in value. It must be more than a mere agreement to sell and convey. It must be a sale to take effect immediately. The rescission or cancellation of an executory contract for the sale of land and the release of the purchaser from the payment of the purchase-money due by him, constitute an extinguishment of the contract of sale and put an end to it, and such transaction does not amount to a sale or alienation of the property by the vendee in such contract, in the sense in which the words "sale" and "alienation" are used in section 6029 of the Civil Code of 1910.

3. While the public may treat land as belonging either to the maker' or the holder of a bond for title, when the latter is in possession, yet, as between the parties, the one receiving the rents or enjoying the use of such land is liable for the taxes.

(*a*) Where a taxpayer was in possession of a plantation composed of several tracts of land held by him under bonds for title with the purchase-money unpaid, and of a tract to which he had the legal title, and returned the same for taxation in one body, he being in possession and having used and received the profits of the tracts so held by him under bonds for title, and where after liens for taxes had accrued, and after

---

Sales, 35 Cyc. p. 25, n. 1; p. 27, n. 12.

Taxation, 37 Cyc. p. 1002, n. 86; p. 1143, n. 27; p. 1145, n. 41; p. 1156, n. 17.

Vendor and Purchaser, 39 Cyc. p. 1358, n. 50,

he had become insolvent and unable to pay the purchase-money due by him upon the tracts held by him under bonds for title, he surrendered the same to his vendors in payment and extinguishment of the purchase-money due by him therefor to his vendors, and where after the liens for taxes had attached he conveyed the tract of land, to which he held the title, to another to secure debt, and where the creditor reduced his debt to judgment, and had the land sold at sheriff's sale, when such vendee became the purchaser thereof, and where executions for such taxes had been placed in the hands of the sheriff by the tax-collector with instructions to make the same out of the proceeds of the sale of the land under the execution obtained by the vendee in such deed, which the sheriff failed to do, and executed his deed to such vendee without requiring him to pay into his hands a sufficient amount of the proceeds of the sale of the land to extinguish such tax executions, upon the promise of the purchaser to pay the same, with which promise the purchaser failed to comply, the payment of said taxes was properly charged by the trial judge to this tract of land to which the taxpayer had the legal title when the liens of the taxes had accrued, prior to the dates of both the security and the sheriff's deed, notwithstanding the surrender of some of the tracts held by the taxpayer under bond for title was made to the vendors after the execution of both of such conveyances.

(b) When the security deed from Burdette to the Washington Exchange Bank was executed, the liens of these taxes had accrued and become fastened on this tract, and the bank took its conveyance and the purchaser from the bank took its conveyance subject to these tax liens.

(c) The facts of this case do not bring it within the principle that "Where two creditors of a common debtor, who is insolvent, each has, relatively to the other, the highest lien upon a distinct parcel of real estate belonging to such debtor, and there are outstanding against the latter tax executions issued generally against him in personam and binding both parcels of the realty, the burden of discharging the liens of these executions should, as a general rule, upon equitable principles, be apportioned between the two lien creditors by making each of the two pieces of property liable ratably for its proportion of the whole amount of the taxes according to the respective valuations at which the property was assessed and returned for taxation."

No. 5549. APRIL 20, 1927.

Injunction. Before Judge Perryman. Wilkes superior court. May 27, 1926.

*B. W. Fortson,* for plaintiff in error.

*William Wynne, C. H. Calhoun, W. A. Slaton,* and *C. E. Sutton,* contra.

HINES, J.    B. F. Burdette was in possession of a body of land containing 2179 acres, which he returned as a whole for taxes for the years 1920 and 1921. This body of land was composed of the following tracts: (1) The Heard place, containing 835 acres, which he acquired from J. F. Heard on January 6, 1917, under

bond for title. (2) The A. W. Simpson place, containing 425 acres, which he acquired from Simpson on September 9, 1919, under bond for title. (3) The Mrs. W. G. Tatom place, containing 223 acres, which he acquired on June 23, 1919, from Daniel & Mobley, who held under a bond for title from Mrs. Tatom, which they transferred to Burdette at the time he purchased the same from them. (4) The F. C. Simpson place, containing 107 acres, which he acquired from Simpson under bond for title. (5) The Mary Simpson place, containing 137 acres, which he acquired from Mary Simpson in October, 1919, and held under bond for title from her. (6) A part of the F. T. Simpson place, containing 106 acres, which he acquired from F. E. Callaway, guardian, in October, 1919, and held under bond for title from said guardian. (7) A tract of 346 acres, to which he held the title.

On June 5, 1920, Burdette conveyed the Heard place to A. W. Simpson to secure the purchase-money of the A. W. Simpson place. On June 7, 1922, Burdette conveyed the Heard place to the National Bank of Wilkes, in payment and extinguishment of the notes of Burdette to Simpson for the purchase-money of the 425 acres, said notes being held by said bank, and in further consideration of the assumption by this bank of the balance of the purchase-money due by Burdette on the Heard place. At the same time Burdette assigned to the bank the bond for title held by him to the A. W. Simpson place. In the spring of 1922 the National Bank of Wilkes released these two tracts to A. W. Simpson. J. F. Heard conveyed to Simpson the Heard place in fee simple. Simpson obtained a loan on both tracts, and then conveyed them to said bank, subject to said loan. On August 5, 1922, Burdette surrendered to Mrs. Tatom the bond for title which she had given to Daniel & Mobley to the Tatom tract, which had been transferred to him, and at the same time conveyed the land back to Mrs. Tatom by quitclaim deed. On January 28, 1921, he conveyed the tract of land of 346 acres, to which he held the title, to the Washington Exchange Bank, as security for a debt, the bank at that time holding his deed to 100 acres of this 346 acres as security for said debt. The Washington Exchange Bank reduced its debt to judgment on March 7, 1922, reconveyed said 346 acres to Burdette for the purpose of levy and sale, had

the conveyance recorded, had its execution issuing on said judgment levied on said land, and advertised and sold the same by the sheriff on April 6, 1922; and on said date the sheriff conveyed this land, pursuant to said sale, to said bank. The bond for title from F. C. Simpson to Burdette, covering the tract of 107 acres, was still outstanding and in possession of Burdette, but the 107 acres of land had been in the possession of the Washington Exchange Bank since 1921 under a deed from F. C. Simpson to said bank, dated January 22, 1917. The bond for title from Mary Simpson to Burdette to the 137 acres was surrendered by him to her in the latter part of 1925, but she had been in possession of the property since 1922. The bond for title from Callaway, guardian, to Burdette, to the 106 acres, and possession thereof, were surrendered to said guardian some time after November 1, 1925.

Tax executions issued against Burdette for the taxes due on said body of land for the years 1920 and 1921. On February 27, 1922, the sheriff levied the tax execution for 1920 on 500 acres of the Heard tract, and on the same day levied the tax execution for 1921 on an additional 185 acres of said Heard tract. The lands thus levied on were advertised for sale by the sheriff at the same time the tract of 346 acres was advertised for sale under the execution in favor of the Washington Exchange Bank, and were put up and exposed for sale thereunder by the sheriff, and were being actually cried off by him, when, for some reason, the sale was called off by the sheriff. The evidence authorized a finding that the tax executions were placed in the hands of the sheriff at the time the tract of 346 acres was sold under the execution in favor of the Washington Exchange Bank, with instructions from the tax-collector to make the same out of the proceeds of the sale of such property, and not to pass title to the purchaser until these executions had been paid. The tract of 346 acres brought a sum sufficient to pay off the tax executions in full; and the sheriff made a deed to the Washington Exchange Bank, the purchaser thereof, without requiring payment to him of a sum sufficient to satisfy the tax executions, said bank promising to pay these executions, which it afterwards failed to do when requested by the sheriff. The deed from the sheriff to said bank for said tract recites a consideration of $2000, and the execution in favor of

the bank under which the property was sold was credited with $2000. In May, 1923, the Washington Exchange Bank conveyed the 346 acres to the Planters Warehouse Company for $5500. Thereafter the sheriff levied said tax executions upon a portion of the Heard place, a portion of the Tatom place, a portion of the A. W. Simpson place, and a portion of the 346-acre tract. Thereupon A. W. Simpson, Mrs. Tatom, and the National Bank of Wilkes filed their petition in this case against the sheriff, the tax-collector, the Washington Exchange Bank, the Planters Warehouse Company, and Burdette, to enjoin the sale of said lands, and to fix and determine among the parties their liability for said taxes. The case was submitted to the trial judge for determination under the law and facts, without the intervention of a jury. On May 27, 1926, the judge, the facts hereinabove recited appearing, and the insolvency of Burdette being admitted, rendered a decree enjoining the sale of said lands under said tax executions, and holding that the only property of Burdette that was subject to the lien of the taxes for the years 1920 and 1921 was the said 346 acres of land. To this decree the Planters Warehouse Company excepted and assigned error thereon upon the grounds that the same is contrary to law and the evidence: (1) because the evidence demanded a finding that said tax executions had been fully settled and satisfied by the sale of the property subject thereto by the sheriff under the levy of the execution on the judgment in favor of Washington Exchange Bank, the sheriff having in his hands at the time of said sale said tax executions, with direction from the tax-collector to make the money on them out of said property, which brought a sum sufficient to satisfy them in full; (2) because the evidence demanded a finding that the 346 acres of land had been divested of the liens of said tax executions by reason of said sheriff's sale; (3) because the evidence demanded a finding that the 346 acres was not subject to said tax executions at all, because their liens had been divested by said sale; (4) because said 346 acres was not the only property subject to the liens of said tax executions, and was not the property first subject thereto; (5) because the evidence showed that said tax was due on the 2179 acres of land of Burdette; and if said property should be charged with said tax in the inverse order of alienation, said 346 acres was not the last parcel of land alienated and should not

be first charged with the payment of said tax; (6) because under the evidence, and in equity and good conscience, all of said land was subject to its taxes and each of said parcels should bear its proportionate part of the whole.

1. It is urged by counsel for the plaintiff in error that the tax executions were paid and satisfied by reason of the fact that they were placed in the hands of the sheriff by the tax-collector, before he sold the 346 acres under the execution in favor of the Washington Exchange Bank against Burdette, with direction to retain a sufficient amount from the proceeds of the sale to pay off the tax executions, said land bringing at said sale a sum sufficient to satisfy said tax executions. Is this position sound? At said sale the Washington Exchange Bank bid off said tract of land, and the sheriff made the bank a deed to this land without requiring it to pay over to him a sufficient amount of the proceeds of the sale to satisfy these tax executions, upon the promise of the bank to pay these taxes, which the bank afterwards failed to do. These taxes have never been paid. In these circumstances, are the liens of the tax executions upon the land so sold extinguished? We do not think so. The liens of these tax executions were not divested by the sheriff's sale under said execution. Taxes are to be paid before any other debt, lien, or claim whatsoever; and property returned for taxation, or held at the time of giving it in for taxation, or after, is always subject. Civil Code (1910), § 1140; *Verdery* v. *Dotterer,* 69 *Ga.* 194 (2). "Liens for taxes due the State or any county thereof, or municipal corporation therein, shall cover the property of taxpayers liable for tax, from the time fixed by law for valuation of the same in each year until such taxes are paid." Civil Code (1910), § 3333. "A sale of property under any other process does not divest the lien of the State for taxes." § 1141. So a sale of land by the assignee of a bankrupt does not divest the lien of the State thereon for taxes due on it, even though sold by the assignee free of incumbrance. *Stokes* v. *Georgia,* 46 *Ga.* 412 (12 Am. R. 588). So the sale of property under decree of court does not divest the lien of the State for taxes due thereon, although the tax fi. fas. have not been levied. *Atlanta &c. Air-Line R. Co.* v. *Georgia,* 63 *Ga.* 483 (2). So a sale of land by the sheriff in November under a general fi. fa. did not divest the lien of the State and county for the year's

taxes of the defendant in such process. In *Wilson* v. *Boyd,* 84 *Ga.* 34 (10 S. E. 499), Judge Bleckley said: "Nothing can be plainer than that the lien of the State and county for the taxes of 1886 was not divested by the sale made in November of that year under an execution issued from the superior court." So we think it is fully settled in this State, both by statute and the decisions of this court, that the lien of the State and county for taxes was not divested by the sale made by the sheriff of this land under the execution in favor of the Washington Exchange Bank. These tax fi. fas., although they were in the hands of the sheriff, were not paid, and their liens on this land were not divested, as they had not been in fact paid from the proceeds of the sale. Whether the sheriff would be liable to the State and county for these taxes by making to the purchaser a deed to this land, without requiring it to pay over to him a sufficient amount of the purchase-money at said sale to liquidate these tax fi. fas., is not now for decision. There is nothing to the contrary of what we now hold, in *Blalock* v. *Buchanan,* 114 *Ga.* 564 (40 S. E. 717), or in *Noles* v. *Few,* 155 *Ga.* 471 (117 S. E. 374). In those cases the purchasers paid to the sheriff a sufficient amount to discharge the tax fi. fas.; and as these tax fi. fas. were superior liens to the process under which the property was sold, and which should have been first paid from the proceeds of the sale, this court properly held that the transaction amounted to a payment of the tax fi. fas., and that the sheriff was without authority to transfer them to the purchasers at these sheriffs' sales. The question now dealt with was not involved in the case of *Patton* v. *Camp,* 120 *Ga.* 936 (48 S. E. 361), and what was said upon this subject by this court in its opinion in that case was obiter dictum, as has been shown by Judge Bell of the Court of Appeals in *Brown* v. *Roach,* 31 *Ga. App.* 476 (120 S. E. 813).

2. Burdette held all of the tracts of land composing his plantation of 2179 acres, which he returned as a body for taxes for the years 1920 and 1921, under bonds for title from the various vendors thereof, except the tract of 346 acres, to which he had the legal title when the liens of these taxes for the above years accrued. He was in possession of the tracts so held by him under bonds for title, enjoying the use thereof or receiving the profits therefrom during said years, and had been in possession thereof

enjoying the use of or receiving the profits therefrom for some time previous to 1920. Becoming involved, he surrendered to his vendors all of the lands which he so held under bonds for title, in payment and extinguishment of the purchase-money due them for their respective tracts, and surrendered to them their bonds for title. All of these surrenders and extinguishments were effected prior to April 2, 1922, except three, which were effected after that date. On January 28, 1921, Burdette conveyed to the Washington Exchange Bank, as security for debt, the 346 acres to which he held the legal title. The bank reduced its debt to judgment on March 7, 1922, and after reconveying said tract to Burdette for the purpose of levy and sale, and after the record of said reconveyance, had its execution levied on said land, which was sold by the sheriff under said levy on April 6, 1922, when the same was bid in by the bank. The sheriff thereupon conveyed this land to the bank. It is insisted by counsel for the plaintiff in error that the surrenders by Burdette of the lands held by him under bonds for title, and the bonds for title, to the vendors in payment and extinguishment of the debts due by him respectively to these vendors, should be treated as sales or alienations by him of this body of 2179 acres of land, and, so treating them, that the various tracts should be charged with the payment of these taxes in the inverse order of their alienation. If these surrenders should be treated as sales or alienations of this body of land, then this position is well taken. When property is subject to a lien, and part of it is sold by the owner, the part remaining in him should be first applied to the payment of the lien; and if the property subject to such lien is sold by the owner in several parcels, at different times, the parcels should be charged in the inverse order of their alienation. Civil Code (1910), § 6029. Can these surrenders be treated as sales or alienations of this body of land? A sale is a transfer of the absolute or general property in the thing for money or something of value. It is a transmutation of property from one man to another, in consideration of some price or recompense in value. It must be more than a mere agreement to sell and convey. It must be a sale to take effect immediately. *Woodward* v. *Solomon,* 7 *Ga.* 246, 252; *Cain* v. *Ligon,* 71 *Ga.* 692 (51 Am. R. 281); *Carr* v. *Rawlings,* 158 *Ga.* 619, 626 (123 S. E. 875). The rescission or cancellation of an executory contract for the sale of land, and

the release of the purchaser from the payment of the purchase-money due by him, constitute an extinguishment of the contract of sale and put an end to it, but do not amount to a sale or alienation of property by the vendee in such contract, in the sense in which the words sale and alienation are used in section 6029 of the Code. That section presupposes that the vendor has title to the property which he sells, but encumbered by a lien; and when he sells it in different parcels, what remains of the property in him must be first applied to the extinguishment of the lien on the property; or if he sells all of the land subject to the lien, at different times, then the portion bought by the last purchaser is first chargeable with the payment of the lien. So we are of the opinion that the principle of that section does not apply, under the facts of this case, to the lands held by Burdette under bonds for title.

3. But it is further urged by counsel for the plaintiff in error, that, if the principle which we have just been considering is not applicable under the facts of this case, then the tracts composing this body of land of 2179 acres should be equally and ratably charged with these taxes according to their respective values. If the vendors in these bonds for title are to be treated as lien creditors of Burdette, each having a superior lien upon their respective tracts comprising portions of the 2179 acres, and if the Planters Warehouse Company can be treated as a lien creditor of Burdette having a superior lien upon the 346 acres, then, as Burdette is insolvent, the burden of discharging the lien of these tax executions should, as a general rule under equitable principles, be apportioned between the lien creditors, by making each parcel of this land liable ratably for its portion of the whole amount of the taxes, according to the value of the respective parcels. *Brooks* v. *Matledge,* 100 *Ga.* 367 (28 S. E. 119). In such a case this is the general rule. But to this general rule there is an exception. While the public may treat land as belonging either to the maker or the holder of a bond for title, when the latter is in possession, yet, as between the parties, the one receiving the rents or enjoying the use is liable for the taxes. Civil Code (1910), § 1018. Burdette was in possession of all the tracts of land which he held under bonds for title. He used the same or received the profits thereof. So, as between him and his vendors, the burden rested

upon him to pay the taxes on the tracts so held by him. Equity follows the law. Civil Code (1910), § 4520. The case being one in equity, the tract of 346 acres would be clearly chargeable, if it were still owned by Burdette, with the payment of all these taxes. When the security deed from Burdette to the Washington Exchange Bank to the 346 acres of land was made, the liens of these taxes had accrued and become fastened on this tract of land. So necessarily the bank took its conveyance to this tract subject to the liens of these taxes. When this land was sold by the sheriff and was bid in by this bank, it, as we have shown, was still subject to the liens of these taxes. Under these circumstances it can not be held that this bank has an equity equal or superior to the equities of the vendors in these bonds for title. A contrary holding would subject to the payment of the taxes due by Burdette, and with payment of which he was personally chargeable out of his own lands, as between him and such vendors, the lands of such vendors to which he did not have legal title. In other words, a contrary ruling would hold that the vendor of lands under bond for title, with none or only a part of the purchase-money paid, who took the same back from his insolvent vendee in extinguishment of his purchase-money due, would have to pay out of his lands so contracted to be sold all taxes due and owing by his insolvent vendee to the extent of the value of the land so bargained to such insolvent vendee, although the latter had received and enjoyed the rents and profits of the land. We do not think this would be fair and just. The Washington Exchange Bank took its security deed with its eyes open, and with knowledge of these tax liens on the 346 acres; and necessarily this was so when it purchased this land at the sheriff's sale. The equity of the bank is not superior to the legal rights of such vendors. Otherwise we would subordinate a clear legal right to an equity. Besides, the equities of the parties are unequal, and the equity of the vendors who had to take back their lands from which the taxpayer had received the profits is superior to that of the holder of the land to which the taxpayer had the legal title when the taxes accrued. Civil Code (1910), § 4524. So we are of the opinion that the judgment of the court below, finding that the 346 acres should be primarily charged with the payment of these taxes, is correct.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Beck, P. J., disqualified.*