ELINE'S, INC., Appellant, vs. TOWN OF MILWAUKEE and others, Respondents.*

*September 15—October 10, 1944.*

For the appellant there was a brief by *Shaw, Muskat & Paulsen* and *Backus & Parson*, all of Milwaukee, and oral argument by *Francis H. Parson* and *Martin R. Paulsen.*

For the respondents there were briefs by the *Attorney General* and *Harold H. Persons*, assistant attorney general,

* Motion for rehearing denied, without costs, on December 19, 1944.

for the state of Wisconsin, *James J. Kerwin,* district attorney, *O. L. O'Boyle,* corporation counsel, and *C. Stanley Perry,* assistant corporation counsel, for Milwaukee county, and *Gabel & Dineen,* for the town of Milwaukee, and oral argument by *Mr. Persons* and *Mr. C. R. Dineen.*

A brief *amicus curiæ* was filed by *Roger Sherman Hoar* and *Clarence J. O'Brien,* both of South Milwaukee, for the Everhart Van Eimeren Post No. 27, Department of Wisconsin, American Legion.

WICKHEM, J. Plaintiff owned a factory building in Milwaukee. On April 20, 1942, the United States filed a petition for condemnation of same pursuant to authority of the Second War Powers Act, 50 USCA, sec. 632. On that date an order was entered in the district court giving the United States immediate possession of the unoccupied portion of the factory as of April 20, 1942, and of the occupied portion as of April 30, 1942. The United States took prompt possession and commenced repairs and alterations in the plant to adapt it for use as an ordnance factory. On June 16, 1942, plaintiff gave the United States an option to purchase for a stated sum pursuant to 50 USCA, sec. 171. This was accepted by the government on August 1, 1942, the option providing, however, that in the event the government did not choose to take a deed and perfected its title through a declaration of taking, the amount named in the option would be the amount to be paid for the property under the declaration. A declaration of taking was filed on November 10, 1942.

A question arose as to the determination of plaintiff's tax liability on the property in this state of the conveyances, and a petition was filed in the United States district court for determination of this liability. The court there held that the lien of real-estate taxes came into existence on November 12, 1942, at the time when the tax was levied, but related back to May 1, 1942, and became a lien as of that date. The court

further found that title to the property passed to the United States on November 10, 1942, and not on April 30, 1942, when the government took possession and started to erect the ordnance plant. On appeal to the court of appeals, the conclusions of the trial court were approved as to the time at which title passed to the United States. The case was, however, returned to the district court with directions to hold until a determination would be had in the state courts as to when real-estate taxes became a lien.

A brief review of the tax procedure may be of service. On April 7, 1942, a resolution was passed at the annual town meeting levying a tax of one mill for general town purposes and one mill for town highway purposes, and the town clerk was authorized and directed to enter such taxes on the tax roll. On July 13, 1942, the town board of review delivered the assessment roll to the town clerk. On September 29, 1942, at an adjourned annual meeting of the board of supervisors for Milwaukee county, the equalized assessed valuation of the town of Milwaukee was fixed. On September 30, 1942, a resolution was enacted by the town board that a one-mill tax for general purposes and a one-mill tax for highway purposes be levied, and the town clerk be authorized and directed to enter the same in the tax roll for the town of Milwaukee. The secretary of state, on October 23, 1942, certified to the county clerk of Milwaukee county the amount of the state taxes. On November 10, 1942, the county board of supervisors adopted its annual county taxes for 1942. On November 12, 1942, the county clerk executed his apportionment of state and county taxes to the town of Milwaukee and delivered same to the town clerk. On November 12th or 13th the town clerk extended in the tax roll against the property in question all taxes for the year 1942, amounting to $27,662.10. These included school district tax, town utility district tax, state tax, county tax, metropolitan sewerage district and town tax.

The tax roll was completed on November 25, 1942, with the exception of special assessments on other property, the levy of which was confirmed on December 18, 1942, and at this latter date the tax roll was entirely completed. It was delivered to the town treasurer for collection on December 21, 1942.

It is contended by plaintiff that no lien for taxes existed until the levy of the tax which took place when the taxes were extended on the tax roll and the latter delivered to the treasurer for collection. If this be sound, the tax lien did not come into existence until after November 10th, at which time the United States took title.

Defendants, on the other hand, contend that the lien of the levy after November 10th relates back to May 1st, attaching as an inchoate lien as of the latter date.

In construing this section the Wisconsin cases have consistently held that taxes are not a specific lien upon any parcel of land until they have been extended on the tax roll and the warrant of collection has been issued. *Spear v. Door County,* 65 Wis. 298, 27 N. W. 60; *Roe v. Lincoln County,* 56 Wis. 66, 13 N. W. 887; *A. H. Stange Co. v. Merrill,* 134 Wis. 514, 115 N. W. 115; *Schlitz Realty Corp. v. Milwaukee,* 211 Wis. 62, 247 N. W. 459. Ch. 179, Laws of 1872, as amended by sec. 1088, R. S. 1878, and ultimately by sec. 1, ch. 190, Laws of 1901, now appearing in the statutes as sec. 74.01, reads, in part, as follows:

"All taxes *levied* upon any tract or parcel of land and all costs, charges and interest thereon shall be a lien thereon until paid except as otherwise provided by law.",

The original of this section was enacted by sec. 160, ch. 18, Stats. 1858, providing:

"All taxes *assessed* on any tract or parcel of land, and all costs, charges, and interest thereon, shall be a lien on such land until paid. . . . "

The word "assessed" was changed to "levy" by the statutes of 1878.

It is a circumstance of some importance that this section contains no specific direction that the lien created by the levy shall relate back to any prior date although when it desired by the same section to make subsequently levied taxes a lien upon logs, wood, and lumber cut upon the assessed lands subsequent to the 1st of May the legislature considered it necessary to expressly provide for the relation of the lien back to an earlier date. Thus, sec. 74.01, Stats., provides on this point:

". . . All taxes levied upon any lands and all costs, charges and interest thereon shall also be a lien on all logs, wood and timber cut upon such lands subsequent to the first day of May in the year in which such taxes are levied. . . . "

The history of those provisions of the vendor-vendee statutes also throws considerable light upon the proper construction of sec. 74.01, Stats. Sec. 130, ch. 15, R. S. 1849, provided as follows:

"As between the grantor and grantee of any land, when there is no express agreement as to which shall pay the taxes that may be assessed thereon, before the conveyance, if such land is conveyed even with, or prior to the date of the warrant authorizing the collection of such taxes, then the grantee shall pay the same; but if conveyed after that date, the grantor shall pay them."

In Sanborn & Berryman's Anno. Stats. 1889, sec. 1153, the following annotation is set out:

"This section applies only to the taxes of the year in which the conveyance is made: *Peters v. Myers*, 22 Wis. 602. It goes upon the theory that the taxes are not a specific lien upon real estate until the tax roll is completed and the taxes extended thereon. A grantor is not liable upon a covenant against taxes unless they have been extended upon the roll at the date of the conveyance: *Spear v. Door County*, 65 Wis. 298.

"Effect of agreement between vendor and vendee that the former shall pay taxes : *Eaton v. Tallmadge,* 22 Wis. 526."

This section has been amended to substitute definite dates for the date of the warrant, but otherwise remains substantially the same. It is clear to us that this section indicates legislative intention that real-estate taxes do not become a lien until the tax roll is completed and the taxes extended thereon. The holding in *Spear v. Door County, supra,* that a grantor is not liable upon his covenant against incumbrances or taxes unless the taxes have been extended upon the roll at the date of conveyance is wholly inconsistent with the theory that the lien of the levy relates back to the time of assessment. While it is true that this doctrine has to do only with taxes of the year in which the conveyance is executed, and does not apply to cases where taxes of years prior to the conveyance have been reassessed (as in *Peters v. Myers,* 22 Wis. 602) that does not militate against the applicability or validity of the doctrine.

We now come to the case principally relied on by defendants, as conclusive on the question here involved. In *Petition of Wausau Inv. Co.* 163 Wis. 283, 158 N. W. 81, application was made to the court in the action of *State ex rel. Owen v. Donald* (which came to this court and was reported in 160 Wis. 21, 151 N. W. 331), by holders of certificates of tax sale upon land in Vilas county which had been purchased by the state for forestry purposes. The petition in the *Donald* action was that the state be required to redeem the certificates out of state funds. The facts were that between April 1, 1908, and July 31, 1912, the state purchased upon land contract some ninety thousand acres of cutover land for forestry purposes. In the litigation which followed, these contracts were held invalid but the state was held to have liens upon the land for the amount of instalments already paid by it upon the purchases. By administrative orders, which it is unnecessary to review here, the state had acquired possession and ownership of the

lands. In the *Wausau Case* the state claimed that the instant it became the owner of any property, tax laws ceased to affect such property no matter what stage the process of taxation may have reached at the time the state became the owner. It followed according to the state that the tax and tax deed became void at such time. This court held that the levies theretofore made related back to the time of the completion of assessment which the court held to be the first Monday in August when the assessor delivered the assessment roll to the town clerk for filing and preservation.

Following the *Wausau Case, supra,* the legislature amended sec. 70.06 (now sec. 70.10), Stats., by inserting the words "real and" and fixing May 1st as the effective date so that the section now reads:

"The assessor shall . . . assess all the real and personal property as of the close of the first day of May in each year. . . . "

Respondent contends that the *Wausau Case, supra,* determines that the lien of the levy relates back to the date of the assessment which by the amendment to sec. 70.10, Stats., is made May 1st. This position cannot be sustained. The question in this case relates solely to the time as of which a specific tax lien existed and no such question was involved in the *Wausau Case.* The *Wausau Case* did not involve or determine the question of the relation back of a tax lien to a point prior to the levy. It established the date as of which the exempt or nonexempt status of the land became fixed. It was simply held that when land passed into an exempt class after the assessment was properly made it did not lose its tax liability. The liability of the land for taxes is quite a different matter and is not involved in this action. We have consistently held that there is no specific lien until the tax is levied and we discover no statutory or other basis for a holding that there is a relation of the lien back to the time of assessment. We limit

the holding in this case to this precise point which is the only point upon which a declaration is requested.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment containing a declaration in accordance with this opinion.

---

* Motion for rehearing denied, with $25 costs, on December 19, 1944.