38210. TEACHERS' RETIREMENT SYSTEM OF GEORGIA
et al. v. CITY OF ATLANTA et al.

HILL, Presiding Justice.

The Teachers' Retirement System of Georgia and the Employees' Retirement System of Georgia (the retirement systems) brought suit against the City of Atlanta and Mayor Maynard Jackson, Fulton County and Chairman Milton Farris, the Joint City-County Board of Tax Assessors of the City of Atlanta and Fulton County, Mr. Otis Thorpe, Chairman, and William Lee Roberts, Tax Commissioner (the taxing authorities), to enjoin the assessment of local ad valorem and excise taxes, and to declare void fi. fas.' issued thereon, against three parcels of property owned by the retirement systems in Atlanta. The taxes sought by the taxing authorities exceed $1,335,000. The superior court held the statutes granting tax exemptions to the retirement systems' property unconstitutional and required the payment of both the ad valorem and excise taxes. The retirement systems appeal.

The Teachers' Retirement System of Georgia was established by law (Ga. L. 1943, p. 640, as amended, Code Ann. Ch. 32-29), pursuant to constitutional authority (1976 Ga. Const., Art. X, Sec. I, Par. I; Code Ann. § 2-6601). It is a public corporation (Code Ann. §§ 32-2902; 40-3508), and its property, investments and assets, and earnings thereon, as well as the transfers of its property are declared to be public property expressly exempt from taxation by statute (Code Ann. § 32-2923.1).[1]

---

[1] Code Ann. § 32-2923.1: "(1) The tangible, intangible, real, personal or mixed

Similarly, the Employees' Retirement System of Georgia was established by law (Ga. L. 1949, p. 138, as amended, Code Ann. Ch. 40-25), pursuant to constitutional authority (1976 Ga. Const., Art. X, Sec. I, Par. II; Code Ann. § 2-6602). It also is a public corporation (Code Ann. §§ 40-2502; 40-3507), whose assets are declared to be public property expressly exempted from taxes (Code Ann. § 40-2512.1).[2]

The administration of both retirement systems is vested in a board of trustees (Code Ann. §§ 32-2906, 40-2506), who "have full power to invest and reinvest such assets, subject to all the terms, conditions, limitations and restrictions imposed by the laws of Georgia upon domestic life insurers in the making and disposing of their investments." Code Ann. §§ 32-2917, 40-2510. Among the investments allowed domestic life insurers are first mortgage loans

●

---

property investments or assets of the retirement system of whatever kind or nature and the earnings or proceeds derived from such property investments or assets are hereby declared to be public property and exempt from taxation by the State, or by any county, municipality, Authority or political subdivision of this State and exempt from levy and sale, garnishment, attachment, or any other process whatsoever.

"(2) The transfer or sale of tangible, real, personal or mixed property, investments or assets to or from the retirement system, and the instruments of such transfer or sale, are hereby exempted from any tax on such sales, transfers or instruments levied by the State or by any county, Authority, municipality or political subdivision of this State." Ga. L. 1976, p. 647 (eff. March 24, 1976). Prior to this enactment, tax exemption was provided by Code Ann. § 92-201 which codified the constitutional authorization quoted in Division 2, below. For the years after 1976, the retirement systems rely on the 1976 enactment quoted above, rather than Code Ann. § 91A-1102 (Ga. L. 1978, pp. 309, 385, eff. Jan. 1, 1980), which repealed Code Ann. § 92-201, supra.

[2] Section 40-2512.1 (Supp. 1981) provides: "(1) The tangible, intangible, real, personal or mixed property, investments or assets of the Retirement System of whatever kind or nature and the earnings or proceeds derived from such property, investments or assets are hereby declared to be public property and exempt from taxation by the State, or by any county, municipality, Authority or political subdivision of this State and exempt from levy and sale, garnishment, attachment, or any other process whatsoever.

"(2) The transfer or sale of tangible, real, personal or mixed property, investments or assets to or from the Retirement System, and the instruments of such transfer or sale, are hereby exempted from any tax on such sales, transfers or instruments, levied by the State or by any county, Authority, municipality or political subdivision of this State." Ga. L. 1976, pp. 611, 612 (eff. March 24, 1976). Prior to this enactment, tax exemption was provided by Code Ann. § 92-201 which codified the constitutional authorization quoted in Division 2, below. For the years after 1976, the retirement systems rely on the 1976 enactment quoted above, rather than Code Ann. § 91A-1102 (Ga. L. 1978, pp. 309, 385, eff. Jan. 1, 1980), which repealed Code Ann. § 92-201, supra.

and deeds to secure debt. Code Ann. § 56-1022. These insurers may acquire such property in satisfaction of debts owed to it. Code Ann. § 56-1028 (1)(b).

Accordingly, the Employees' Retirement System made secured loans on the Bent Creek Apartments on Bent Creek Way in Atlanta, and, with the Teachers' Retirement System, in the Stadium Hotel on Capitol Avenue in Atlanta. The Teachers' Retirement System also made a secured loan on the Beta Building on Northside Drive, Atlanta. These loans later went into default.

The Employees' Retirement System (ERS) acquired the Bent Creek Apartments by foreclosure of its security interest in April 1975, and resold them in June 1979. The taxing authorities seek to collect ad valorem taxes from ERS from 1975-1979.

On December 31, 1975, the Teachers' Retirement System (TRS) took title, by deed in lieu of foreclosure, to the Beta Building. On June 1, 1976, a one-half undivided interest was conveyed by TRS to ERS. The retirement systems maintain their principal offices there, although remaining space is rented. The taxing authorities seek to collect ad valorem taxes from January 1, 1976.

The retirement systems also foreclosed on their jointly held security deed to the Stadium Hotel in July 1977. The taxing authorities seek not only the ad valorem taxes accruing since 1977, but also unpaid back taxes from 1975 through 1977. In addition, the City of Atlanta desires to collect its hotel-motel excise tax on the operation of the Stadium Hotel.[3]

1. At the outset, we find that the three parcels are "public property." The investments and acquisitions were authorized by law. Code Ann. §§ 56-1022, 56-1028 (1)(b), supra. The retirement systems are public corporations. Code Ann. §§ 32-2902, 40-3508, 40-2502, 40-3507, supra. Property held by a public corporation for the benefit of the state and not for private or corporate profit and income is public property. *Culbreth v. Southwest Ga. Regional Housing Auth.*, 199 Ga. 183, 188-189 (33 SE2d 684) (1945), and cases cited; *Sigman v. Brunswick Port Auth.*, 214 Ga. 332 (2) (104 SE2d 467) (1958); *Hospital Auth. of Albany v. Stewart*, 226 Ga. 530, 538 (175 SE2d 857) (1970). Property held by the retirement systems is not held for the benefit of private citizens; it is held for the benefit of public employees for whom the General Assembly has created retirement systems. Although the properties in question produce income, as do

---

[3] Thus the ad valorem tax issues involve taxes for the years prior to the year of acquisition by the retirement systems (Division 4), taxes for the year of acquisition (Division 5), and taxes for the years after the year of acquisition (Divisions 1-3).

cabins in state parks and the hotel facilities at the continuing education center at the University of Georgia, they are nonetheless public property.

Because the retirement systems' activities are clearly authorized, *Tippins v. Cobb County Parking Auth.,* 213 Ga. 685, 688 (100 SE2d 893) (1957) (county cannot directly or indirectly own a parking lot) and *Beazley v. DeKalb County,* 210 Ga. 41 (77 SE2d 740) (1953) (county cannot issue revenue bonds to construct and maintain general storage warehouses), relied on by the taxing authorities are inapposite. *Sigman v. Brunswick Port Auth.,* supra, 214 Ga. at 337.

Having found that all three parcels are public property, we need not separately consider the fact that the Beta Building is used as the principal offices of the retirement systems.

2. The Constitution authorizes the General Assembly to exempt from taxation, among other things, all public property and certain property owned by religious, charitable and educational institutions, as well as libraries and museums. It provides: "The General Assembly may, by law, exempt from taxation all public property; places of religious worship or burial and all property owned by religious groups used only for residential purposes and from which no income is derived; all institutions of purely public charity; . . . all buildings erected for and used as a college, incorporated academy or other seminary of learning, and also all funds or property held or used as endowment by such colleges, incorporated academies or seminaries of learning, provided the same is not invested in real estate; and provided, further, that said exemptions shall only apply to such colleges, incorporated academies or other seminaries of learning as are open to the general public; the real and personal estate of any public library . . . all books and philosophical apparatus and all paintings and statuary of any . . . [public museum]; provided the property so exempted be not used for the purpose of private or corporate profit and income, distributable to shareholders in corporations owning such property or to other owners of such property, and any income from such property is used exclusively for religious, educational and charitable purposes, or for either one or more of such purposes and for the purpose of maintaining and operating such institution; *this exemption shall not apply to real estate or buildings other than those used for the operation of such institution and which is rented, leased or otherwise used for the primary purpose of securing an income thereon. . . .*" (Emphasis supplied.) 1976 Ga. Const. Art. VII, Sec. I, Par. IV (Code Ann. § 2-4604).

The trial court read the emphasized portion of this provision (the exception to the exemption) as modifying the words "all public

property" and found that the three parcels here were "real estate or buildings other than those used for the operation of such institution" (the retirement systems), and were "rented, leased or otherwise used for the primary purpose of securing an income thereon." That is, the trial court found the three parcels to be within the exception to the exemption, and therefore held the statutes, Code Ann. §§ 32-2923.1 and 40-2512.1, supra, to be invalid as applied to these parcels.

The exception to the exemption was added to the Constitution in the Constitution of 1945. Prior to 1945, the General Assembly was authorized to exempt "all public property" from taxation. Also prior to 1945, property held or used as endowment by a college, etc., was exempt, except real property (see Ga. L. 1917, p. 39). When the exemption was being discussed by the Constitutional Commission of 1943-44, the following transpired (Records of Constitutional Commission, Vol. 1, p. 530):

"MR. LOVEJOY. . . . Add these words: 'This exemption shall not apply to real estate or buildings other than those used for operation of such institution and which is leased or used for the primary purposes of securing income thereon.'

"CHAIRMAN ARNALL. What does it mean? As I understand it, it means that if you rent the building and use the income from the building for charity then that exemption applies?

"MR. LOVEJOY. No sir, it means just exactly like college endowments. If they own a store in Atlanta which they rent out, the Constitution now provides that real estate must pay ad valorem tax. It is applying that principle to all the real estate of any *institution* if it is real estate rented out in competition with adjoining real estate. That is one of the reasons given. I say we submitted and recommended it, but also we thought we would carry out a principle which was at least tacit.

"CHAIRMAN ARNALL. You have heard the amendment. Is there any objection to its adoption? If I understand it, it leaves the status of real estate owned by charity rented. Is there any objection to its adoption? Without objection it is ordered adopted." (Emphasis supplied.) Thus the discussion of the exception to the exemption was brief and expressly mentioned only "institutions," specifically charities, saying that charities, like colleges, if they own a store which they rent must pay ad valorem taxes.

Thus, we do not read the exception to the exemption as modifying "All public property" or as creating an exception to the exemption for "all public property." That this exemption does not apply to "public property" was recognized by implication in *Hospital Auth. of Albany v. Stewart,* supra, where this court, in answer to a certified question from the Court of Appeals, held that real property

held by the hospital, but not a part of the hospital itself, the income from which was used for hospital purposes, is exempt "public property."[4] If a hospital authority can hold real property for income purposes consistently with this constitutional provision, then the retirement systems can also.

We therefore hold that this exception to the exemption is not applicable to public property, all of which the General Assembly is authorized to exempt from taxation.[5] It follows that the trial court erred in finding the exception applicable to public property and in finding Code §§ 32-2923.1 and 40-2512.1 to be unconstitutional as applied.

3. The taxing authorities contend that Code Ann. §§ 32-2923.1, 40-2512.1, supra, are also unconstitutional as violating the uniformity of taxes required by 1976 Ga. Const., Art. VII, Sec. I, Par. III; Code Ann. § 2-4603. They argue that the exemption creates nonuniformity because otherwise commercial property is removed from the tax rolls and because the disproportionate amount of property owned by the retirement systems in Atlanta has a greater impact on the tax digest in its taxing district than in other tax districts. The uniformity argument was found to be without merit in *State of Ga. v. Western & A. R. Co.,* 136 Ga. 619, 625. (71 SE 1055) (1911) (holding that the uniformity provision does not apply to public property). The tax immunity for public property authorized by the Constitution is not abrogated by the uniformity provision of the Constitution.

Nor do we find that such exemptions constitute an illegal donation or gratuity. 1976 Ga. Const., Art. III, Sec. VIII, Par. XII; Code Ann. § 2-1413. *Sigman v. Brunswick Port Auth.,* 214 Ga. 332, 335, supra. See *State of Ga. v. State Toll Bridge Auth.,* 210 Ga. 690, 697-698 (82 SE2d 626) (1954). See also Division 1, above, showing that the purpose of the retirement systems is to compensate public employees for service to the state.

4. Also at issue in this case is whether or not the retirement systems' ownership is subject to the ad valorem taxes owed by the prior owners of the Stadium Hotel, which constituted liens on the property when it was acquired by foreclosure.

---

[4] The record shows that the land held by the hospital authority for income was several city lots, some pecan groves and some farming acreage.

[5] In reaching this conclusion we have avoided relying on the presumption in favor of acts of the General Assembly because of its possible conflict with the proposition that taxation is the rule and exemption is the exception.

This is an issue of first impression in Georgia. The retirement systems urge that acquisition by an exempt governmental unit extinguishes any obligation the governmental unit may have as to liens for prior taxes. They rely on the "majority view"; see 72 AmJur2d State and Local Taxation § 894 (2d ed. 1974); 158 ALR 563, 565 (1945); e.g., State v. Locke, 219 P 790 (N. M. 1923). The taxing authorities, however, urge that the liens should not be extinguished, citing cases generally holding that liens, once attached, do not become divested by later sales. E.g., *Planters Warehouse v. Simpson,* 164 Ga. 190 (138 SE 55) (1927); *Federal Land Bank v. Moultrie Banking Co.,* 178 Ga. 150 (172 SE 455) (1933).[6] Foreign jurisdictions are split on the issue. 72 AmJur2d, supra; 158 ALR, supra. Compare State v. Locke, supra, with Wausau Investment Co.'s Petition, 163 Wis. 283 (158 NW 81) (1916); State v. Salt Lake County, 96 Utah 464 (85 P2d 851) (1938).

We adopt the rule that in the absence of statute, when a tax-exempt public entity acquires property on which taxes have accrued (see Division 5, below), the public entity acquires the property subject to the taxes. See United States v. Alabama, 313 U. S. 274, 281-282 (61 SC 1011, 85 LE 1327) (1941). This holding prevents retroactive loss of revenues among the differing governmental bodies to which taxes are owed, as here, where acquisition by the state would otherwise erase significant income of the local taxing authorities. This holding is consistent with the practice in this state that governmental entities condemning property name the taxing authorities as condemnees (or give notice of condemnation to the taxing authorities) and thereby require payment of back taxes at the time of condemnation. Anything to the contrary in *Zuber Lumber Co. v. City of Atlanta,* 237 Ga. 358 (6) (227 SE2d 362) (1976), will not be followed. If we were to adopt the rule advocated by the retirement systems that back taxes become null and void as to the tax-exempt public entity when property is acquired by it, governmental condemnors could render collection of tax obligations very difficult by acquiring property under threat of condemnation without requiring payment of taxes already owed.

There is a further reason for adopting the rule we do here. Security deeds generally, as they did here, provide for default, and hence foreclosure, for nonpayment of taxes. It seems incongruous to us that the retirement systems could declare a default for

---

[6] Of course, the prior owners remain liable for the taxes. *Jones v. Morse Bros. Lumber Co.,* 171 Ga. 753 (156 SE 587) (1930).

nonpayment of taxes, foreclose based on that default, and thereby render the taxes null and void as to it. Moreover, the retirement systems can protect themselves against taxes accruing on its secured property and they should not benefit from their failure to require mortgagors to pay their taxes. See United States v. Alabama, supra.

The retirement systems argue that tax liens on their properties cannot be enforced and therefore should be declared void. See *Neal-Millard Co. v. Trustees of Chatham Academy,* 121 Ga. 208, 213 (48 SE 978) (1904). Thus the retirement systems impliedly say, in a nice way, that they are not bound by the law. We do not have before us the questions which would be raised if the retirement systems failed to fulfill their obligations, and hence we need not reach this issue here.

Therefore, the trial court was correct in finding that when the retirement systems foreclosed on the Stadium Hotel in 1977, they took the property subject to the taxes for 1975 and 1976.

5. The taxing authorities also seek to collect 1975 ad valorem taxes on the Bent Creek Apartments, contending that the property became subject to taxes on January 1, 1975, even though the retirement systems did not acquire the property until April 8, 1975. The retirement systems rely on the fact that the tax rate was not fixed and the taxes were not levied until after April 8, and by that time the property had become exempt.

The taxing authorities rely on the proposition that taxes attached to the property on January 1, 1975. See Code Ann. § 92-5708. The retirement systems rely on *Rayle Electric Membership Corp. v. Cook,* 195 Ga. 734, 735 at headnote 3, (25 SE2d 574) (1943). In *Rayle EMC* this court held that adoption of a constitutional amendment exempting property of rural electric membership corporations "from all taxation" must be taken to "include all such properties where the process of taxation, though begun, had not been fully consummated." *Rayle EMC* is not applicable here; it involved adoption of a constitutional tax exemption which became effective before the process of taxation (determination of the rate of levy and imposition of the levy) was completed. Here no constitutional amendment or statute was adopted; there was merely a foreclosure. Hence the rule that taxes attached to the property on January 1 is applicable.

The trial court correctly held that when ERS foreclosed on the Bent Creek Apartments in April 1975, it took the property subject to taxes for 1975. The court also correctly held that when the retirement systems foreclosed on the Stadium Hotel in July 1977, they took the property subject to the taxes for 1977. No similar question arises as to the Beta Building since it was acquired on December 31, 1975, and taxes for the year 1975 had been paid.

6. Finally, we reach the question whether the retirement systems are liable to the City of Atlanta to pay its hotel-motel excise tax.[7] Charter and Code, City of Atlanta, Georgia § 14-6178.[8] Section 14-6179 provides: "Every *person occupying* a guest room in a hotel in this city is liable for the tax. His liability is not extinguished until the tax is paid to the city except that a receipt from an operator ... who is authorized by the commissioner ... to collect the tax, ... which receipt is given to the occupan[t] ... is sufficient to relieve the occupant from further liability for the tax to which the receipt refers." (Emphasis supplied.) An operator is "[a]ny *person operating* a hotel in the city, including but not limited to, the owner or proprietor of the premises, lessee, sublessee, lender in possession, licensee to or any other person otherwise operating the hotel." Charter and Code, City of Atlanta, Georgia § 14-6 (7)(b).

It is clearly the intent of the ordinance to collect the tax from the persons occupying the room; the operator or owner acts only as a collecting agent. Since the tax is clearly not on the operator or owner, and since in this case the Stadium Hotel is operated by an independent contractor, the retirement system can claim no exemption for the benefit of its independent contractor.

The argument by the retirement system that the tax is on the "transfer or sale ... of real ... property ... to or from" the retirement systems and is exempt under Code Ann. §§ 32-2923.1 (2) and 40-2512.1 (2), supra, is without merit. The tax is on the "person occupying a guest room," not on the "transfer" of the room. The Code sections relied on by the retirement systems give no tax exemption to "persons occupying a guest room" at the Stadium Hotel. The trial court was correct in so holding.

*Judgment affirmed in part; reversed in part. All the Justices concur, except Weltner, J., disqualified.*

DECIDED MARCH 2, 1982 —
REHEARING DENIED MARCH 23, 1982.

*Michael J. Bowers, Attorney General, John E. Bumgartner, Assistant Attorney General,* for appellants.

*James Barnett, Marva Jones Brooks, W. Roy Mays III, Thomas L. Murphy,* for appellees.

---

[7] Enabling legislation for this tax is found at Code Ann. § 91A-6201.

[8] "There is hereby levied and assessed, and there shall be paid a tax of three (3) per centum of the rent for every occupancy of a guest room in a hotel in the city."

ON MOTION FOR REHEARING.

The retirement systems argue that the state is not bound by laws unless named therein or unless the law is indubitably applicable to the state. Code § 102-109. From this they argue that the lien for taxes did not attach on January 1 of the years in which the retirement systems acquired the properties (see Division 5) because the retirement systems are not "taxpayers liable to tax" within the meaning of Code Ann. § 91A-252 (formerly Code Ann. § 92-5708).

Code Ann. § 91A-252 provides in pertinent part: ". . . liens for all taxes due . . . any county or municipality in the State shall cover the property of taxpayers liable to tax, from the time fixed by law for valuation of the property in each year until such taxes are paid. . . ."

When the liens attached on January 1, the mortgagors were "taxpayers liable to tax" and when the retirement systems foreclosed later in the year, they took the properties subject to the taxes for those years. Code § 102-109 is not applicable because the liens attached to the properties before the retirement systems foreclosed. We deal here with the passage of title to realty rather than "the passage of law" within the meaning of Code § 102-109. Certainly the state will not be heard to argue that if Doe owns Blackacre, the state can acquire title from Roe notwithstanding laws which say that only Doe can convey title to Blackacre.

*Motion for rehearing denied.*