HUGHES COUNTY et al, Plaintiffs, v. HENRY et al, Defendants; and

HUGHES COUNTY et al, Appellants, v. STATE OF SOUTH DAKOTA et al, Respondents.

(202 N. W. 286.)

(File Nos. 5823, 5843.  Opinion filed February 10, 1925.)

1.  Taxation—Rural Credit Board—Mandamus—Duty of Rural Credit Board to Pay Delinquent Taxes on Lands Covered by Its Mortgages.

It is duty of rural credit board to pay taxes on lands covered by its mortgage loans when they become delinquent, as neither Rev. Code 1919, Secs. 10150-10173 (Secs. 10151, 10153, 10159, 10162, and 10168, amended by Laws 1919, c. 304), providing for rural credit loans, Rev. Code 1919, Sec. 6758, which makes liens of taxes superior to other liens except as against United States and the state, nor Sec. 6804, which provides that tax deed conveys fee simple subject to claims of state, make lien of taxes subordinate to lien of rural credit mortgage.

2,  States—Taxes—Rural Credit Board—Rural Credit Board May Use Any of Its Funds to Pay Taxes.

The rural credit board has power to pay taxes on lands covered by its mortgages from any funds it can use in making loans, as payment of taxes is an incident to making loan.

3.  States—Legislature—Constitutional Law — State Cannot Divest Itself of Power to Collect Taxes.

Whether rural credits represent a sovereign or proprietary function of the state, the state is, as in the case of eminent domain or police power, powerless to surrender the right of self-preservation in the assessment of taxes and the means for collection of the same.  And, queare, assuming rural credits a

proprietary or business function and the state, as mortgagee, possessed of the right of other mortgagees to refuse the payment of taxes on mortgaged land, may the state in such private capacity, as mortgagee, be estopped as against the state in its sovereign capacity as tax collector, by the conduct and representation of its agents in discouraging purchasers at tax sales?

Appeal from Circuit Court, Hughes County; Hon. John F. Hughes, Judge.

Original proceeding by mandamus by Hughes County and Harrold Independent Consolidated School District No. 3 against C. M. Henry and others, as members of the South Dakota Rural Credit Board, which was consolidated with an appeal by the above-named plaintiffs from an adverse judgment in a suit brought by them against the State of South Dakota and others. Original writ granted, and judgment appealed from reversed and remanded, with directions.

*Fuller & Robinson,* of Pierre, (*Alvan G. Swanson,* State's Attorney for Bennett County, of Martin, *C. P. Seward,* State's Attorney for Butte County, of Belle Fourche, *Harry R. Wilmsen,* State's Attorney for Corson County, of McIntosh, *George Thwing,* State's Attorney for Dewey County, of Timber Lake, *Paul Byrne,* State's Attorney for Faulk County, of Faulkton, *Harry L. Brown,* State's Atorney for Haakon County, of Philip, *Chas. L. Brady,* State's Attorney for Harding County, of Buffalo, *Harry R. Horner,* State's Attorney for Hughes County, of Pierre, *M. Harry O'Brien,* State's Attorney for Hyde County, of Highmore, *Harold P. Gilchrist,* State's Attorney for Jackson County, of Kadoka, *H. L. Bode,* State's Attorney for Jones County, of Murdo, *A. C. Miller,* State's Attorney for Lyman County, of Kennebec, *John P. Everett,* State's Attorney for Meade County, of Sturgis, *R. W. Hutchinson,* State's Attorney for Mellette County, of White River, *John F. Schrader,* State's Attorney for Pennington County, of Rapid City, *C. M. Parsons,* State's Attorney for Perkins County, of Bison, *F. W. Lambert,* State's Attorney for Stanley County, of Ft. Pierre, *M. H. Quimby,* State's Attorney for Sully County, of Onida, and *C. E. Talbott,* State's Attorney for Tripp County, of Winner, of counsel), for Plaintiffs and Appellants.

*Buell F. Jones,* Attorney General, and *E. D. Roberts* and *R. F. Drewry,* Assistant Attorneys General, for Defendants and Respondents.

Plaintiffs cited, to point that statutes should not be construed as intending interference with collection of taxes: Maryland Realty Co. v. Tacoma ('Wash.), 209 Pac. 1, 3; McMillan v. Tacoma (Wash.), 67 Pac. 68; that power of taxation, analogous to right of eminent domain, cannot be surrendered: State of Georgia v. City of Chattanooga, 68 L. ed. 796; Pennsylvania Hospital v. Philadelphia (U. S.), 62 L. ed. 124; South Carolina v. United States (U. S.), 50 L. ed. 261; Maryland Casualty Co. v. McConnell (Tenn.), 257 S. W. 410; United States v. Foulass-William, etc., Co., 3 Wyo. 287; that restrictions in tax deed relate only to individual purchasers at tax sale and not to incumbrances of state acquired in its private capacity: Sec. 6804, Rev. Code 1919; on effect in statutory construction, of history in legislation, and for rule of construction: Standard Oil Co. v. Tennessee (Tenn.), 10 L. R. A. (N. S.) 1015, 1021; Funk v. St. Paul . City R. Co. (Minn.), 29 L. R. A. 208, 210; State v. Flaherty, 23 N. D. 313, 41 L. R. A. (N. S.) 132; Sutherland on Statutory Construction, Secs. 216, 463; State ex rel Byrne v. Ewert, 36 S. D. 622; on mandatory construction of statute: People v. Board of Supervisors (N. Y.), 3 Hill 614; 36 Cyc. 1159; Supervisors v. United. States (U. S.), 19 L. ed. 423; 36 Cyc. 112, 1924 Anno.; State v. Phelps (Wis.), 128 N. W. 1041, 35 L. R. A. (N. S.) 353, 356; on school loans: Trustees of Public Schools v. Taylor, 30 N. J. Eq. 618, 622; State v. Chancellor (N. J.), 17 Atl. 942; Pugh v. Commissioners (N. J.), 23 Atl. 270; James v. Marcus, 28 Ark, 231, 239; State ex rel Wasson v. Jones, 95 Ind. 179; Reed v. State, 74 Ind. 252.

Defendants cited: Secs. 6758, 6804, 5669, Rev. Code 1919; Chap. 304, Laws 1919, Sec. 5, Art. 11; that county is collecting agent of state: 37 Cyc. 1145; that state property not subject to taxation: Cooley, 4th Ed., Sec. 91, p. 217, Vol 1; Trustees v. City, 30 N. J. Eq. 682; Notes 48 L. R. A. (N. S.) 708, 712; to effect of code adoption on prior statutes: Ex parte Davis v. Davis, 42 S. D. 294, 297, 174 N. W. 741; Hughes v. Board of Commissioners, 25 S. D. 480, 127 N. W. 613; that rural credits is a sovereign function of state: Green v. Frazier, 253 U. S. 233, 64 Fed. 878; Jones v. Portland, 242 U. S. 217; Murray v. Distilling Co., 213 U. S. 151, 53 L. ed. 742; Cunningham v. Macon & B. R. Co., 109 U. S. 446, 27 L. ed. 992; Toppan v. Railroad Co., 3 Tenn.

Rep. 106; tax sale purchasers' notice of superior rights to state as mortgagee: McWhinney v. City of Logansport, 132 Ind. 9, 31 N. E. 449; Fisher v. Brower, 159 Ind. 139, 64 N. E. 614.

GATES, J.  Two cases are before us by consolidation; one an original proceeding in mandamus, the other an appeal from the circuit court of Hughes county.  We first consider the mandamus proceeding.

By chapter 333, Laws 1917, acting under an amendment to Constitution, art. 13, § 1, adopted by the people at the November, 1916, election, the state embarked in the business of making farm loans.  That chapter as amended by chapter 334 of the same session, and as amended at the Special Legislative Session of 1918 (chapter 58), appears in the Revised Code of 1919 as sections 10150 to 10173.  Chapter 304, Laws 1919, is the only amendatory act since the Code.  The writ of mandamus was sought by the county of Hughes and Harrold independent consolidated school district, a school district of said county, against the members of the South Dakota Rural Credit Board, hereinafter called "the board," to compel the redemption from tax sale of certain premises within said county and school district upon which there is a "rural credit" loan.  The facts alleged in the application for the writ, briefly stated, are as follows:  A rural credit loan of $10,000 was made on a section of land within said school district on July 1, 1922.  The 1922 taxes which became due January 1, 1923, were unpaid, and at the county tax sale on December 10, 1923, the premises were struck off to Hughes county for want of bidders, and a tax sale certificate was issued to Hughes county.  Rev. Code 1919, § 6794.  The tax represents, among others, a levy for state purposes of 1.9 mills and a school tax of 13.3 mills.  The state levy includes a tax for the maintenance of the state government and its public institutions and for the payment of the interest on, and the establishment of a sinking fund to retire, state bonds aggregating $14,900,000; consisting of highway bonds, $6,000,000; soldiers' compensation bonds, $6,000,000; cement plant bonds, $2,000,000; and land settlement bonds, $900,000.  In addition to the maintenance of the school the school tax is in part for the purpose of paying the interest on, and the establishment of a sinking fund to retire, school district bonds issued upon a loan to

the school district of a portion of the permanent school fund of the state. In addition thereto the total tax levy includes a sum to provide for the payment of the premium for hail insurance under the state Hail Insurance Law (chapter 244, Laws 1919, and amendments). It is also alleged that none of the 1923 taxes have been paid, and that there was no purchaser therefor at the tax sale for the taxes of that year. It is common knowledge that many of the counties of the state are seriously crippled by the nonpayment of taxes on lands upon which there are rural credit mortgages. The state's attorneys of 18 counties other than plaintiff are joined as "of counsel" for plaintiff in this case. It is stated in plaintiff's brief, although not alleged as a fact in the application for the writ, that the unpaid taxes on lands covered by rural credit mortgages exclusive of the taxes of 1924 in Perkins county alone amount to more than $82,000.

The defendants demurred to the application for the writ, and moved to quash the alternative writ because: (1) No duty rested upon the board to pay the taxes, consequently mandamus will not lie; (2) it is not shown that there is not an adequate remedy at law; (3) it is not shown that the board has or can obtain funds to pay the taxes; (4) if the board has means or authority to pay the taxes, the exercise of such power is discretionary; (5) the lien for taxes is inferior to the lien of the rural credit mortgage by reason of the provisions of sections 6758 and 6804, Rev. Code 1919; and (6) the board is without power to pay taxes except such as may be superior to the lien of such mortgage.

The contentions of plaintiff are: (1) That in the absence of legislation to the contrary taxes should be held to be superior liens. (2) That the provisions of section 6804, Rev. Code 1919, are not applicable to rural credit mortgages because: (a) At the time of its adoption the use of the credit of the state for the making of farm loans was not conceivable; (b) the application of that section to rural credit mortgages would be inimical to the public interest; (c) the rural credit act does not establish the lien of the mortgage to be superior to the lien of taxes; (d) the provisions of said section relate to liens created in favor of the state in its sovereign capacity only and not in its private or business capacity; and (e) that there is no provision whereby the county can take a tax deed on property mortgaged to the state. (3) That the provisions of

said section 6804 relate to tax deeds taken by private individuals only.   (4) That the tax lien is superior to the mortgage lien. (5) That permission to pay taxes amounts to a duty under the circumstances of this case.

[1]   The text of the rural credit act does not, in terms, enjoin upon the board the duty of paying taxes in case the mortgagor does not.   In terms the authorization is merely permissive. It is as follows:

"Every borrower   *   *   *   by express covenant in his mortgage deed shall pay, when due, all taxes, liens, judgments, assessments and insurance which may be lawfully assessed against the mortgaged land.   Taxes, liens, judgments, assessments or insurance, not paid when due and paid by the mortgagee, shall become a part of the mortgage debt."   Subdivision 9, § 10159, Rev. Code 1919, as amended by chapter 304, Laws 1919, § 3.  .

There is nothing in the act that intimates that the lien of general taxes shall be superior to the lien of the rural credit mortgage, nor that the lien of general taxes shall be inferior to the lien of the rural credit mortgage.   It does appear, however, that a loan may be made on lands subject to liens or assessments for drainage, reclamation, or irrigation payable in installments where the installments are not then due.   Subdivision 3, § 10159, Rev. Code 1919, as amended by chapter 304, Laws 1919, § 3.   The plain inference therefrom is that the mortgage lien in such case is subject to the lien of the assessment, but that for the purpose of definition of what is a first mortgage such a mortgage shall be deemed a first mortgage.   Attention is called to this merely to show that no legislative intent is disclosed in the act to make the lien of the mortgage superior to all other liens.

It is urged by plaintiffs that permission to pay taxes, liens, judgments, assessments and insurance makes the duty imperative. The rule is thus stated in 25 R. C. L. 767:

"Although the words of a statute are merely permissive, directory or enabling, they may nevertheless have the force of words of command where the power or duty to which they relate is for the advancement of public justice or the security and protection of public or private rights."

While we might be inclined to assent to that doctrine except as to items that are clearly subordinate to the lien of the mort-

gage or in which the interest of the public is not involved, yet we think it unnecessary in the present case to decide that the lien of the taxes is superior to the lien of the mortgage. We think the duty of the board to pay taxes, permission being given, may safely rest upon the broad ground of the right of self-preservation of the state and of its governmental subdivisions, the county, township, and school district. Without the collection of revenue neither the state nor its governmental subdivisions can function. If the police power of the state is such and its power of eminent domain is such that the state cannot divest itself of them (Contributors to Penn. Hospital v. City of Philadelphia, 245 U. S. 20, 38 S. Ct. 35, 62 L. ed. 124; State of Georgia v. City of Chattanooga, 264 U. S. 472, 44 S. Ct. 369, 68 L. ed. 796; Sanitary District of Chicago v. United States, 45 S. Ct. 176, 69 L. ed. 352), then certainly the state ought to be powerless to divest itself of its right of self-preservation. If the lien of the taxes is superior to the lien of the mortgage, there is a clear duty on the part of the board to pay the taxes when they become delinquent. If the liens of the taxes and of the rural credit mortgage are co-ordinate and of equal rank, then the duty of the board to pay the taxes is none the less clear, for it would not be seemly for one arm of the state to take a position, unless clearly authorized so to do, that would tend to embarrass the functioning of the state government. It is only in case the Legislature has clearly designated the lien of the mortgage to be superior to the lien of taxes that the board could be said to be absolved from the duty of paying delinquent taxes on the lands covered by its mortgage loans. As above intimated, it may be seriously questioned whether the Legislature could lawfully make the lien of taxes subordinate. It certainly ought not to do so to an extent that would prevent the collection of that portion of the school fund loaned to Harrold school district, and it is clear that the board ought not to take a position that would impair the permanent school fund, for by the Constitution "the principal shall forever remain inviolate, and may be increased, but shall never be diminished, and the state shall make good all losses thereof which may in any manner occur." Const., art 8, § 2.

But it is urged that sections 6758 and 6804, Rev. Code 1919, make the lien of taxes subordinate to the lien of rural credit mortgages. Section 6758 says:

"Taxes upon real property shall be a perpetual lien thereon against all persons and bodies corporate, except the United States and this state."

That clause makes the lien of taxes on real estate superior to other liens except as against the United States and this state. Miller v. Anderson, 1 S. D. 539, 543, 57 N. W. 957, 11 L. R. A. 317. But that language does not make the tax lien subordinate to the state's mortgage lien. It merely provides that the tax lien is not superior to the mortgage lien.

Nor does section 6804 attempt to place the lien of the real estate tax subordinate in rank to the lien of the rural credit mortgage. That section provides for the giving of notice of the expiration of the time of redemption from tax sale and for the execution of the tax deed, and further provides:

. "Such deed shall vest in the grantee an absolute estate in fee simple in such real property, subject, however, to all claims which the state may have therein for taxes, liens or incumbrances."

That sentence appeared in our laws in territorial times. It existed before a notice of the expiration of the time of redemption from tax sale was required to be given (chapter 151, Laws 1890), and also before the county treasurer was authorized to strike off land at tax sale to the county for want of other bidders (chapter 131, Laws 1885), and it was not until the enactment of chapter 291, Laws 1915, that notice of the expiration of time of . redemption from tax sale was required to be given to mortgagees. Even then and since then there has been no provision made for . the service of such notice upon the state because no person or officer has been designated upon whom service may be made. There being no possibility of the county or any other tax certificate holder acquiring a tax deed on real property on which the state holds a mortgage, said section 6804 has no application to such a state of facts. But, even if there were no requirement for the service of notice of expiration of the time of redemption from tax sale upon mortgagees, the result would still be the same. The quoted clause of said section 6804 up to the time that a county could take a tax deed clearly contemplated that the applicant for tax deed was a private person or corporation, and therefore of necessity contemplated that all taxes evidenced by the tax sale certificate had been paid. In other words, the state, county,

township, school district, and other taxing districts had received their portion of the taxes, and there was not then a question of a tax due the state or any of its governmental subdivisions on the one hand and the state as mortgagee or other lien holder on the other hand. We do not think that the fact that the county may now take a tax deed on certificates held by it for want of other bidders at tax sale, even if provision were made for service of notice on the state, tends to make the tax lien subordinate to the lien of the state's mortgage. True, the fee-simple estate supposed to be represented by the tax deed is subject to the state's mortgage, but, when the county takes over the premises at tax sale for want of other bidders, and when it gives notice of the expiration of the time of redemption, and when it takes a tax deed, it is still acting as an arm of the state in the collection of taxes because it pays out no portion of the taxes represented by the tax sale certificate until it has obtained the tax deed and has sold and conveyed the property. Rev. Code 1919, § 6803. Then, and not until then, is the tax lien abated. Then, and not until then, do the state and its subordinate taxing districts receive their share of the taxes. Then, and not until then, does the above-quoted portion of said section 6804 come into operation. We are therefore satisfied that the Legislature has not attempted to make the lien of taxes subordinate to the lien of rural credit mortgages.

The question as to whether by its rural credit operations the state is engaged in its private or business capacity as distinguished from its sovereign or governmental capacity, is a serious one, but the disposition we have made of the case renders unnecessary the consideration of that question.

[2] The assertion by the board that it is not alleged that it has funds available to pay taxes is not worthy of serious consideration. The payment of taxes is an incident to the making of a loan. The board has the power to pay taxes from any funds it can use in the making of loans.

There is another feature of the case to which attention should be called. By section 10163, Rev. Code 1919, the Attorney General is made the legal adviser of the board. On December 26, 1922 (A. G. Op. '24, p. 336), Attorney General Payne advised the board that because of said section 6804 the lien of rural credit mortgages was superior to taxes, but he also said:

"It is the intent of the law that the rural credit board shall pay delinquent taxes upon lands upon which they hold mortgages. If rural credit borrowers fail to pay taxes, and the same are not paid by the rural credit board, it will result in the withdrawal of a large amount of property from contributing to the common burden of taxation. There will be no purchasers of such taxes, for the reason that, if the state secures title under a foreclosure of its mortgage, the holder of a tax certificate would be deprived of his lien and the taxes would be canceled by title vesting in the state."

We think the rural credit board should have followed the advice of the Attorney General and not have permitted the present unfortunate condition of public affairs to have arisen.

All of the grounds of the demurrer and of the motion to quash are deemed to be without merit. Our conclusion is that the alternative writ should be made peremptory. A stipulation having been filed that defendants waive the right to answer, the writ will be made peremptory, but before it is signed and filed it is expected that the parties will agree upon a date on or before which the board will obey the peremptory writ. In default of such agreement application may be made to the court to fix such period.

Upon the appeal which was consolidated with the mandamus proceeding we need only say that the judgment of the trial court based upon a conclusion of law that the lien of the rural credit mortgage was superior to the lien of the taxes should be reversed. Inasmuch as the mandamus proceding will dispose of that case, it will be remanded, with directions to dismiss without costs to either party.

In this court costs will be taxed for plaintiffs and appellants.

ANDERSON, J., not sitting.

SHERWOOD, J. (concurring specially). It is with much reluctance and hesitation I am expressing views differing from my associates in this case.

But the right of the state, its subdivisions, and municipalities to levy and collect without delay or hindrance the taxes necessary to their existence should, I think, be decided when squarely presented as they are in this case.

Nor should the state as mortgagee be subjected to a burden

not imposed on other mortgagees, based on a clause found in practically all mortgages in the state, providing in substance that unpaid taxes, liens and judgments when paid by the mortgagee should become a part of the mortgage debt.

It is conceded as a fact in this case that the state through its rural credits board, which is admittedly a department of the state government, has loaned about $40,000,000 and taken mortgages therefor on about 12,000 quarter sections of land within the state. The Attorney General, the head of another branch of the state government, has expressed the view that the lien of such mortgage is superior to the lien of the state for taxes levied subsequent to the recording of these mortgages.

The doubt so raised as to whether the lien of a general tax levied for the support of the state government, its subdivisions, and municipalities was superior or inferior to a rural credits mortgage has prevented people from purchasing at tax sale practically all lands on which rural credit loans have been made, and the state, its subdivisions, and municipalities have not only been hindered and delayed, but in counties where many rural credit loans were made, absolutely prevented from the collection of taxes necessary to the very existence of the state and its subdivisions.

In my view, this directly challenges the most important sovereign power of the state which is not only to tax but to collect such tax speedily without hindrance or delay.

It was said by Mr. Justice Miller in Savings & Loan Association v. Topeka, 20 Wall. 655, 22 L. ed. 455:

"The power to tax is, therefore, the strongest, the most pervading of all the powers of government."

It was said by Chief Justice Marshall in McCulloch v. Maryland, 4 Wheat. 431, 4 L. ed. 579:

"The power to tax involves the power to destroy."

"The superiority of the lien for general taxes must be asserted, even to the point of destroying the lien of the local assessment." Maryland Realty Co. v. City of Tacoma, 121 Wash. 230, 209 P. 1; McMillan v. Tacoma, 26 Wash. 308, 67 P. 68.

"In all governments of constitutional limitations, sovereign power manifests itself in but three ways: By exercising the right of taxation; the right of eminent domain; and through its police power. * * * The right of taxation is one of the most striking

attributes of sovereignty. In this field government approaches the absolute." United States v. Douglas Willan Sartoris Co., 3 Wyo. 297, 22 P. 92; State of Georgia v. City of Chattanooga, 264 U. S. 472, 44 S. Ct. 369, 68 L. ed. 796.

In an action involving the right of eminent domain it was held that the right was so inherently governmental and essential to the public welfare that it could not be abridged by agreement. Penn. Hospital v. Philadelphia, 245 U. S. 20, 38 S. Ct. 35, 62 L. ed. 124.

The conflict here is plainly between the state in its general sovereign taxing power and a mortgage made by a minor subdivision of the same state, and it seems clear that the power and lien created by the state must be greater than that created by such subdivision.

There is another reason why the lien of this tax should be superior to the lien of a rural credit mortgage. When the state engaged in the business of making rural credit loans, it was certainly not acting in its sovereign capacity, but was engaged in the business of loaning money in competition with other citizens of the state. Stavg v. Van Camp, 46 S. D. 472, 193 N. W. 731.

As was said by Chief Justice Marshall in U. S. v. Planters' Bank of Georgia, 9 Wheat. 904, 6 L. ed. 244:

"It is, we think, a sound principle, that when a government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted. Thus many states of this Union, who have an interest in banks, are not suable even in their own courts; yet they never exempt the corporation from being sued. The state of Georgia, by giving to the bank the capacity to sue and be sued, voluntarily strips itself of its sovereign character, so far as respects the transactions of the bank, and waives all the privileges of that character. As a member of a corporation, a government never exercises its sovereignty. * * * The government, by becoming a corporator, lays down its sovereignty, so far as respects the transactions of the corporation, and exercises no

power or privilege which is not derived from the charter." Bank of Tennessee v. Dibrell, 3 Sneed (35 Tenn.) 379; South Carolina v. U. S., 199 U. S. 437, 26 S. Ct. 110, 50 L. ed. 261, Ann. Cas. 737; Lloyd v. New York, 5 N. Y. 569, 55 Am. Dec. 347; Georgia v. Chattanooga, supra; Maryland Casualty Co. v. McConnell, 148 Tenn. 656, 257 S. W. 410.

The court will take judicial notice that the state of South Dakota is not going, but has already gone, extensively into various lines of business heretofore occupied by private citizens.

It is also clear that the mere assertion that the state was acting in its sovereign capacity in loaning money, and therefore the lien of its mortgages was not only superior to the lien of the mortgage of its competitors but also superior to the state's lien for taxes, has been sufficient to practically paralyze the ordinary functions of government in at least 16 counties of the state.

I think many of these grave questions will not arise in this or other relations of the state, in private industry, if we base this opinion on the superiority of the state's tax lien over the lien of its mortgages and the proposition that when it enters into private business in competition with its citizens it is not acting in its sovereign capacity.

It follows that the lien of the tax was superior to the lien of the rural credit mortgage; that the writ of mandamus should be granted on the grounds above set forth and the judgment of the lower court reversed.