## STATE v. SALT LAKE COUNTY et al.

No. 5994.   Decided December 28, 1938.   (85 P. 2d 851.)

Rehearing denied April 5, 1939.

*Harold E. Wallace,* Co. Atty., and *Brigham E. Roberts,* Deputy Co. Atty., both of Salt Lake City, for appellants.

*Joseph Chez,* Atty. Gen., and *S. D. Huffaker,* Deputy Atty. Gen., for respondent.

PER CURIAM.

The state of Utah sued the defendants in an action to quiet its title to a tract of farm land situated within the Jordan School District, Salt Lake County, Utah. Defendants both demurred and answered. The trial court gave judgment for plaintiff, quieting its title, and the defendants appeal. The errors assigned present the question of the existence and ranking priority of a tax title claimed by defendants under a sale of the property for delinquent taxes on the property as against the State's title by deed from the tax debtor in satisfaction of a mortgage held by the State as security for money borrowed from the State through the State Land Board. The admissions of the respective parties and the findings of the trial court establish the following facts:

On June 2, 1924, one Lawrence L. Rindlisbach, owner of the property, borrowed from the State $2,800 and mortgaged the land as security for its payment. After part payment the note and mortgage were renewed on March 10, 1930, in the sum of $1,800. On December 16, 1936, the mortgagor being in default for nonpayment of a number of installments of principal and interest, and threatened with foreclosure, executed a warranty deed conveying the mortgaged property to the State of Utah. In consideration thereof the State cancelled and satisfied the note and mortgage.

Meantime the property was assessed and sold for taxes of 1932 and bid in by Salt Lake County for $76.44. Taxes for 1933 to 1936 inclusive accrued and were added and, upon failure to redeem, the County Auditor on April 15, 1937, deeded the property to the County in satisfaction of the taxes. The amount of the taxes for the added years is not shown in the findings, but on the basis of the 1932 taxes would be about $305.76, plus interest and penalties. On the basis of the tax rates averaged through the years, the share of the State of Utah in the whole would be about 45½%, Salt Lake County 25½%, and Jordan School District 29%.

The money loaned to Rindlisbach on his note and mortgage was part of the proceeds of the sale of lands granted to the State of Utah by the Enabling Act for the use and benefit of the University of Utah, the principal to remain a permanent fund, and the interest only to be used for maintenance of the University.

The court also found, on the basis of the June 30, 1926, report of the State Land Board, that 120,071.85 acres of land in Utah were being held under mortgages taken by the Board, all first class farm lands. This finding is not of controlling importance.

The controlling questions for decision are: (1) Whether taxes levied upon land after it is mortgaged to the State to secure a loan of State money and prior to default or foreclosure are valid and lawful tax claims; (2) if valid, whether such taxes are a lawful and valid lien on the mortgaged premises from the time they are levied; (3) if such lien exists from the time the statute imposes it, whether the lien survives the acquisition of title by the State on foreclosure of its mortgage or by voluntary deed from the mortgagor in lieu of foreclosure; and (4) whether an auditor's tax deed to the County for delinquent taxes vests title in the County as against the State's acquisition of title by deed from the mortgagor and tax debtor.

Section 8 of the Enabling Act, 28 Stat. 109, by which Utah was admitted into the Union, grants various large bodies of land to the State for the use of its University with the provision that:

"The proceeds of the sale of said lands, or any portion thereof, shall constitute permanent funds, to be safely invested and held by said State; and the income thereof to be used exclusively for the purposes of such university * * *."

Section 5, article 10 of the State Constitution contains the same identical provision as above quoted from the Enabling Act. And section 7 of said article 10 further provides that

"All public School Funds shall be guaranteed by the State against loss or diversion."

By statute at an early date the State Land Board was authorized to:

"* * * Make the necessary orders for the investment or disposal of the funds in the state treasury derived from the sale of public lands of this state. Such funds shall be invested for and on account of the specific purposes for which the lands were granted, in * * * first mortgages on improved farm lands within the state, * * * but no loan secured by mortgage on such improved lands shall exceed one-half of the value of such lands, plus twenty per cent of the value of the substantial buildings thereon; [buildings to be insured, etc.].

"Nothing in this section shall be construed to prevent the board from advancing necessary funds to pay taxes and assessments, or to pay costs and expenses and a reasonable attorneys' fee, in case foreclosure becomes necessary in order to protect the state's rights in any property upon which a mortgage has been taken as provided herein." Utah Compiled Laws of 1907, Sec. 2357; Utah Compiled Laws 1917, Sec. 5607, as amended by Laws of 1925, Chap. 31, page 66; Utah Revised Statutes 1933, 86-1-50.

The following provisions of our State Constitution are also pertinent:

"All property in the State, not exempt under the laws of the United States, or under this Constitution, shall be taxed in proportion to its value, to be ascertained as provided by law." Clause 1, Sec. 2, Art. 13, Utah Constitution.

"The property of the United States, of the State, counties, cities, towns, school districts, * * * shall be exempt from taxation." Clause 2, Sec. 2, Article 13, Utah Constitution.

"The Legislature shall provide by law a uniform and equal rate of assessment and taxation on all tangible property in the State, according to its value in money, and shall prescribe by law such regulations as shall secure a just valuation for taxation of such property, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its tangible property * * *." Sec. 3, Art. 13.

"All corporations or persons in this State, or doing business herein, shall be subject to taxation for State, County, School, Municipal or other purposes, on the real and personal property owned or used by them within the Territorial limits of the authority levying the tax." Sec. 10, Art. 13.

Referring now to Clause 1 in Section 2, Article 13 of the Constitution (above quoted), we said in *State ex rel. Richards* v. *Armstrong,* 17 Utah 166, 53 P. 981, 982, ■ 41 L. R. A. 407:

"This provision is clear and explicit, and, under its command, no property within this state, except such as is exempt by virtue of the laws of the United States, or of the constitution of this state, can escape the burden of taxation."

And in the same case, referring to Sec. 3, Article ■ 13 of the Constitution, we said:

" 'This provision made it incumbent upon the legislature to provide a uniform system of taxation by which every species of property within the state * * * should equally and ratably bear its due proportion of the public burden, and the legislature had no power to exempt property not exempt under the constitution. The intention manifest from the several provisions of that instrument relating to taxation and revenue is * * * that no power should exist in the state government to grant exemptions other than those mentioned in the constitution.' * * * 'The presumption is that all exemptions intended to be granted were granted in express terms. In such cases the rule of strict construction applies, and, in order to relieve any species of property from its due and just proportion of the burdens of the government, the language relied on as creating the exemption should be so clear as not to admit of reasonable controversy about its meaning, for all doubts must be resolved against the exemption.' *Judge* v. *Spencer* [15 Utah 242, 48 P. 1097]."

The only provision of our state constitution exempting any class of property from taxation is that found in clause 2 of Section 2, Article 13 (quoted above, so far as relevant). And the question presented is whether the exemption therein of "state property" can be made to cover property in private ownership that was not "state property" at the time it was assessed for taxation, the tax levied, the tax lien attached, or the property sold for unpaid taxes. In this case the tax sale certificate was recorded January 3, 1933, and of course all the steps to levy the tax occurred before that date. But the State did not acquire title thereto by deed from the tax debtor until December 16th, 1936. If the property was private property of Rindlisbach, as it had to be in order that he might mortgage it to the State in 1930, and in order that he might deed it to the State in December, 1936, then it was not also property of the State during any of the period of time prior to December, 1936, so as to acquire the status of property exempt from taxation as state property. No one will seriously contend that it is unlawful for a county to assess and levy taxes on private property solely because the State has a mortgage on it. The very fact that the statute (R. S. U. 1933, 86-1-50) authorizes the State Land Board to pay taxes on lands mortgaged to the State, when necessary to protect the State's interests, is a recognition of the liability of such lands to taxation. The expectation of course is that the mortgagor will pay his taxes and keep his loan in good standing. The Legislature recognized, however, that defaults and foreclosures might occur, in some cases, and that the mortgagors might also neglect to pay their taxes, so that the State's security would thereby be impaired. Consequently it made provision by the statute (86-1-50) for payment by the Board of taxes along with attorney's fees and other expenses—"in case foreclosure becomes necessary in order to protect the state's rights in any property upon which a mortgage has been taken as provided herein"

A loan of money on the security of a mortgage does not

operate to transfer the mortgagor's title to the lender until condition broken, sale and sheriff's deed or until, in lieu thereof, the mortgagor's deed to the mortgagee. The constitution does not in terms or by implications, exempt private property from taxation even after the State takes a mortgage upon it. And the rule, long recognized by this court, that exemption from taxation must be shown by express grant in the constitution admitting of "no reasonable controversy" is not satisfied by anything short of that.

If the taxes for 1932 to 1936, inclusive, were lawfully levied against this property as that of Rindlisbach, and we have so held, then by what process of reasoning can they be adjudged unlawful after and solely because the State obtained a deed for the property from Rindlisbach on December 16, 1936, in satisfaction of its mortgage? The State by that deed could acquire only such title as its grantor had at the time of the deed; that is, a title encumbered by taxes theretofore lawfully assessed and levied, and by prior tax sales, if any.

If taxes lawfully levied upon the property prior to December 16, 1936, must be cancelled, or the property discharged of the tax lien, it is not because the taxes were unlawfully levied at the time, but because of a subsequent change of ownership whereby it becomes profitable to the State to have the taxes cancelled instead of paid. To escape payment the State cannot loan its exemption status to its grantor, and have it reach back retroactively, for several years and ward off or cancel taxes already levied on his property. That would be abatement of taxes, not exemption from taxation.

In *State ex rel. Richards* v. *Armstrong*, supra, we held that while there might be a shade of difference in meaning between abatement of taxes already levied and an attempted exemption of private property from taxation, yet the difference relates merely to the method rather than to the effect, and that the ultimate result, whether by exemption or abatement, is precisely the same. In either case the

property is relieved from its burden of taxation contrary to the prohibition of our state constitution. We there held that:

"* * * the intention of the framers of the constitution, by exempting certain property, was not so much to prevent an assessment and levy of tax thereon as to free it from the burden of maintaining the government. When the tax is abated or remitted after it has been levied, the same object is accomplished; and therefore the mandates of the constitution that such burdens shall be 'equal and uniform' on all property within the state, except such as is exempt by the fundamental law, and that 'every person and corporation shall pay a tax in proportion to the value of his, her, or its property,' may be violated by either method. * * *

"No one would contend for a moment that the legislature of this state has power in express terms to exempt property from taxation, other than that enumerated for exemption in the constitution; and yet in the enactment of the statute in question the legislature has undertaken to indirectly exempt property not so enumerated. This is an attempt to do indirectly that which could not be done directly, and the statute therefore is in violation of the constitution, and is void * * *."

Our decision in *Logan City* v. *Allen*, 86 Utah 375, 44 P. 2d 1085, is not contrary to that in *State ex rel. Richards* v. *Armstrong*, supra. The decision in the Allen Case is based upon a statute of this State, Rev. St. 1933, 80-10-61, authorizing the County Commissioners to permit redemption from tax sales upon payment of less than the full amount of the taxes, interest, penalties and costs in cases where the "interest of the state and the county will be subserved" thereby. The issues in this case do not present a question arising within the operation of that statute, nor a question as to its constitutionality. It will suffice to determine such questions when they arise. It has, however, been held that a constitutional provision requiring uniformity and equality does not prevent the passage of a "compromise law" for the clearing up of arrearages where delinquent taxes have accumulated beyond the ability of owners to pay or the state to enforce. *Ide* v. *Finneran*, 29 Kan. 569; *Livesay* v. *De Armond*, 131 Or. 563, 284 P. 166, 169, 68 A. L. R. 422; Cooley

on Taxation, Sec. 264; *Ledegar* v. *Bockoven*, 77 Okl. 58, 185 P. 1097.

The case here presented is that of an attempt to cancel or nullify the entire taxes for a number of years against the Rindlisbach property, and to destroy the lien thereof without any statute purporting to authorize the same, but in violation of the constitutional principle of equality of taxation, solely because the State has succeeded to the title to the property so encumbered.

If the Legislature cannot by statute authorize abatement of taxes lawfully levied, how can it be contended that any state officer, board, or this court, can, without even the sanction of legislative authority, permit an abatement or cancellation of taxes lawfully levied on private property, merely because it subsequently became the property of the State?

We further held in *State ex rel. Richards* v. *Armstrong*, supra, that:

"To prevent the legislature from exempting property not included within the exemptions of the constitution, express words of inhibition were not necessary. The positive direction that 'all property not exempt under the laws of the United States or under this constitution shall be taxed,' and that the rate of assessment and taxation shall be 'uniform and equal,' so that 'every person and corporation shall pay a tax in proportion to the value of his, her or its property,' with the enumeration of the property exempted, contains an implication against an exemption of any other property by the legislature. That direction itself operates as a restraint upon the legislative power." To the same effect see *Wilson* v. *Supervisors of Sutter County*, 47 Cal. 91; *City of Zanesville* v. *Richards*, 5 Ohio St. 589; *Exchange Bank* v. *Hines*, 3 Ohio St. 1; *Hunsaker* v. *Wright*, 30 Ill. 146; *Board of Commissioners of Gunnison County* v. *Owen et al.*, 7 Colo. 467, 4 P. 795; *State* v. *Burleigh County*, 55 N. D. 1, 212 N. W. 217; 26 R. C. L. 252.

The same provision of our constitution which exempts state property from taxation (Art. 13, Sec. 2, clause 2), also exempts the property of cities, towns, public libraries, church property, and other classes of property. In the case

of City of *Philadelphia* v. *Barber*, 160 Pa. 123, 28 A. 644, it was held:

"A church * * * is not entitled to an exemption from taxes for the current year for more than the portion thereof during which it holds title to the property."

And in *Moore* v. *Taylor*, 147 Pa. 481, 23 A. 768, it was held that where at the time of the general assessment of property, church property was exempt but later in the year it ceased to be church property, the exemption from taxation ceased with the change in ownership and the property became assessable in the hands of the purchaser for the remainder of the year.

Taxation is one of the most important attributes of sovereignty. Public order, private property, education itself, would perish and disappear without government and the taxes which support it. The very existence of government is dependent upon its power to tax persons and property and the power to exact payment of taxes levied or imposed. In *Robinson* v. *Hanson* et al., 75 Utah 30, 32, 282 P. 782, we said [page 783]:

"It is a recognized principle of law that taxes for general governmental purposes, lawfully imposed by the state, are paramount to all other demands against the taxpayer. * * * This rule rests upon public policy and necessity. Civil government cannot exist or be maintained without revenues, and taxes levied by the state for its support are founded upon a higher obligation than other demands. It is essential to the dignity and power of the sovereign state that taxes levied by it be promptly collected without fail. * * *

"The first and paramount necessity for social order, personal liberty, and private property is the maintenance of civil government; and government cannot exist without revenues."

The theory upon which the trial court ruled in favor of the State by exempting in its favor property from a tax lawfully imposed thereon prior to its acquisition by the State, cannot be sustained. Although there is some authority to the contrary the weight of authority and sound reason,

as we view it, sustains the opposite conclusion. To this effect we cite the cases of: *Triangle Land Co.* v. *City of Detroit*, 204 Mich. 442, 170 N. W. 549, 551, 2 A. L. R. 1526; *City of Puyallup* v. *Lakin*, 45 Wash. 368, 88 P. 578; *City of Santa Monica* v. *Los Angeles County*, 15 Cal. App. 710, 115 P. 945; *Mayor and Aldermen of Jersey City* v. *Montville Township*, 84 N. J. L. 43, 85 A. 838; *Public Schools of City of Iron Mountain* v. *O'Connor*, 143 Mich. 35, 108 N. W. 426; *Toole County Irrigation District* v. *State*, 104 Mont. 420, 67 P. 2d 989; *Hughes County* v. *Henry et al.*, 48 S. D. 98, 202 N. W. 286; *State* v. *Burleigh County*, 55 N. D. 1, 212 N. W. 217; *In re Wausau Investment Company*, 163 Wis. 283, 158 N. W. 81.

Thus, in the case of *Jersey City* v. *Montville Township*, supra, it was held that the question of exemption from taxation must relate to the status and ownership of the property in question on the day when the tax lien of any year would attach if subject to taxation. In *Public Schools of Iron Mountain* v. *O'Connor*, supra, it was held that whenever the statutory process of assessment, valuation, and levy has proceeded to a point where property can no longer be lawfully added to or taken from the tax roll, the lien of such taxes becomes fixed, and a city purchasing thereafter like any other purchaser, takes title subject to the tax lien. The opinion quotes Cooley on Taxation, 3rd Ed., p. 380, on the point that in such case the fact that the property later becomes exempt from taxation cannot displace the tax lien.

In *Hughes County* v. *Henry*, supra, where the facts and constitutional and statutory provisions were similar to those in the case at bar, it was held [page 287];

"There is nothing in the [Rural Credit] act that intimates that the lien of the general taxes shall be [either] superior [or inferior] to the lien of the rural credit mortgage, * * * [or] to make the lien of the mortgage superior to all other liens. * * * We think the duty of the board to pay taxes, permission being given, may safely rest upon the broad ground of the right of self-preservation of the state and of its governmental subdivisions, the county, township, and school

district. Without the collection of revenue neither the state nor its governmental subdivisions can function. If the police power of the state is such and its power of eminent domain is such that the state cannot divest itself of them [citing U. S. Supreme Court decisions,] then certainly the state ought to be powerless to divest itself of its right of self-preservation. If the lien of the taxes is superior to the lien of the mortgage, there is a clear duty on the part of the board to pay the taxes when they become delinquent."

As we said in *State* v. *Eldredge,* 27 Utah 477, 76 P. 337, 339:

"The assessment and collection of taxes, for the support of the government, are among the highest acts of supreme power." To the same effect see *U. S.* v. *Sartoris Co.,* 3 Wyo. 287, 297, 22 P. 92; *State of Georgia* v. *City of Chattanooga,* 264 U. S. 472, 44 S. Ct. 369, 68 L. Ed. 796; *Citizens Savings & Loan Ass'n* v. *Topeka,* 20 Wall. 655, 22 L. Ed. 455.

In the case of *State* v. *Burleigh County,* supra, the facts were closely like the case at bar—taxes assessed and levied after the owner had mortgaged his land to the State to secure a loan, and a tax sale for non-payment prior to the sheriff's deed to the State on foreclosure. The governing statute provided, in such case, that upon foreclosure sale and deed to the State, the unpaid taxes shall be concelled by the board of county commissioners of the county where the land is. We have no such statutory direction in Utah but the case is in point in respect of the State's contention that the prior taxes in this case ought to be cancelled and abated upon the State's acquisition of title without any such statutory authority. A transaction is not lawful which the legislature cannot constitutionally make lawful. It was held in the Burleigh County Case that notwithstanding the statute such taxes could not be lawfully cancelled or abated. If such a statute would be impotent to warrant such abatement of taxes, it can hardly be urged that the taxes in this case can be abated without statutory authority, and in the face of explicit statutory direction (Revised Statutes of Utah 1933, 86-1-50) authorizing the State Land Board to pay

the taxes in case of foreclosure so as to protect the State's interest.

We quote further from the Burleigh County Case, 212 N. W. 219, it being understood that the quoted references to a statute in that case, authorizing cancellation of taxes in the event of a sheriff's deed to the State on foreclosure of its mortgage, have equal relevance and bearing upon the contention made in the instant case that the taxes should be cancelled or abated without the authority of a statute, in case the State shall later acquire title to the property taxed by foreclosure or private purchase from the debtor:

"So far as the tax debtor is concerned, the tax is paid by the sale, whether there be a private bidder or whether the property be struck off to the county for the amount of the tax, interest, penalty, and costs." Citing 26 R. C. L. 417; *United States* v. *Lawton*, 110 U. S. 146, 3 S. Ct. 545, 28 L. Ed. 100.

And this was said to be true, although the local taxing units are not, at that stage, entitled to be credited by the county for their respective shares of the taxes while the county still holds the tax certificate. We quote further:

"After the [tax] sale there is no longer a tax which is subject to abatement. * * *

"The test for cancellation under the statute is whether the tax is paid or unpaid. It could not be successfully contended that the right of a private holder of a tax sale certificate evidenced by his original purchase would be in the least affected by subsequent abatement or cancellation of the tax for which the property had been sold. This would impair the obligation of his contract and a law that would purport to authorize it would be void. * * *

"Ordinarily, unpaid taxes include only those of the current year, or those which had accrued during the period of redemption from the mortgage foreclosure sale, and which, consequently, had been assessed and levied during a time when the state held a defeasible title. It is one thing to direct that such a tax be canceled and quite a different matter to direct the cancellation of tax certificates substantially representing ownership of the property.

"There is so little difference between a diversion of local revenues to a purpose other than that for which they were originally levied and a taking of the property, which is the sole security for those revenues,

or which stands in lieu of them, for a different purpose, that a construction such as contended for by plaintiff raises serious constitutional questions. * * *

"It is difficult to understand the persistency with which the discussion centers on the event of loss when it is so apparent that the statute applies without regard to loss in the particular transaction and even in the face of assured profit. The further answer is that if there be a loss it is a loss which must ultimately be borne by taxpayers generally and not by taxpayers in a locality where the experience has been especially unfortunate. The enterprise is general; not local.

"Under the Constitution, taxation must be uniform within the territorial limits of the authority levying the tax. It cannot be distributed over different areas according to the varying degrees of success or failure within them of a general enterprise. The procedure contended for might visit extreme inequality of tax burden upon different properties or taxpayers in the same district by compelling those * * * paying their obligations to make up the shortage in revenues incident to cancellation of tax certificates. * * *

"An attempt to [protect the bond payment fund] through arbitrary cancellation of tax certificates, without regard to the value of the property chargeable with both liens, is open to the usual objections against arbitrary action. If the tax lien may be canceled without regard to the adequacy of the security for both the tax lien and the mortgage lien, * * * it could as well be declared in advance that the lien for taxes should never attach to property mortgaged to the state as security for a loan. * * *

" 'Uniformity in taxing implies equality in the burden of taxation.' *Exchange Bank* v. *Hines*, 3 Ohio St. 1-15. Obviously, there could be no uniformity as between two tracts of equal value in private ownership if one only were subject to an enforceable obligation for taxes. This constitutional requirement is just as sacred as the declaration that the property of the state shall be exempt.

"There is here no attempt to tax state property. Rather there is asserted in behalf of a state agency a claim to immunity covering a period prior to the time when the state became an owner—a period of time during which the property in question could not, constitutionally, have been exempted.

"So far is this claim of immunity from an observance of the requirement of uniformity that, construed as the plaintiff construes it, the statute would actually authorize, indirectly, the value of a lien for taxes to be converted into profits in the Bank of North Dakota to be credited to its farm loan department, while requiring the incidental corresponding deficiencies in revenues to be met by local taxpayers. Followed to its logical conclusion the plaintiff's main contention would

justify the taxing of a portion of the Lands in any taxing district to create a profit in the farm loan department of the Bank of North Dakota. * * *

"The security may be ample to satisfy both the certificate and the loan. Neither is it apparent to us that there was any impelling necessity for appropriating money to take up the tax certificates as an alternative to their cancellation. * * *

"If the security [for a state owned farm mortgage] be inadequate * * * and a loss is inevitable in a particular case, [the loss can] be met by a general tax levy. If such loss cannot be absorbed by a corresponding profit, it is open to grave question whether it may be made up at the expense of one or more local taxing districts, as would be the case if the outstanding tax certificates were canceled. * * *

"If, while such a tax remains collectible, * * * the lien representing the tax may be canceled, and its value made to enhance a different fund, the spirit, if not the letter, of section 175 of the Constitution, is flagrantly violated."

Reference is made to the opinion at length in the Burleigh County Case for a fuller grasp of its penetrating analysis of a situation that is common to many states at the present time.

Respondent's counsel have cited to our attention a number of cases from other states in support of their contention that upon acquisition by the State, or a county, city or other municipal subdivision, such property becomes at once exempt not only from the imposition of new taxes but also from sale to collect taxes previously assessed and ■ levied. Not all the cases cited involve prior taxes or present the exact question we have here. Insofar as they have a degree of pertinency upon their facts we must decline to follow them because inconsistent in principle with our own prior decisions rejecting the exemption status save where expressly granted by the constitution. Also because the cases so cited do not harmonize among themselves with respect to the grounds or reasons for the conclusions reached. Court decisions are authoritative only upon questions of law or fact actually presented, discussed and decided. *King* v. *School District*, 261 Mich. 605, 609, 610, 247 N. W. 66; *State* v. *Board of County Com'rs*, 89 Mont. 37, 296 P. 1; *Cohens* v.

*Virginia,* 6 Wheat. 264, 5 L. Ed. 257; *Hughes County* v. *Henry,* supra. We will examine some of them which, in type, represent the rest.

In *City of Laurel* v. *Weems,* 100 Miss. 335, 56 So. 451, *King* v. *School District,* supra, *Graham* v. *City of Detroit,* (one tract) 174 Mich. 538, 140 N. W. 949, 44 L. R. A., N. S., 836; *State* v. *Snohomish County,* 71 Wash. 320, 128 P. 667; *Foster* v. *City of Duluth,* 120 Minn. 484, 140 N. W. 129, 48 L. R. A., N. S., 707; the taxes in question were levied in the same year during which the state's or city's title was acquired and before the tax lien would have been perfected or attached to the property had it continued in private ownership. As the court stated in *State* v. *Snohomish County,* supra, the "developing process of taxation * * * was arrested" by the state's purchase, so that the tax claim and lien never matured or came into existence. No such situation is presented at bar.

In the Weems Case, nevertheless, the court employs many arguments to sustain its conclusion of exemption status that were unnecessary upon the facts stated, but which overlook entirely the constitutional objections we have mentioned.

In *State* v. *Locke,* 29 N. M. 148, 149, 219 P. 790, 30 A. L. R. 407, the taxes in question were for a previous year, but the court copied its reasoning entirely from the Weems Case, where no such question was presented on the facts and without considering the constitutional objections.

In *Gasaway* v. *City of Seattle,* 52 Wash. 444, 100 P. 991, 21 L. R. A., N. S., 68, the distinction was taken that where a city acquired property for public use as part of its waterworks system by a decree of court in condemnation proceedings under the power of eminent domain, its title so acquired is protected against prior tax liens, but that where a city purchases from a private owner and obtains title by contract and deed (as in *City of Puyallup* v. *Lakin,* supra, decided by the same court), for a like public purpose, it takes title subject to prior tax liens. A distinction which, if cor-

rect, would not exempt the State's title in the instant case from the disputed tax liens.

The case of *City of Chicago* v. *People ex rel. Miller,* 80 Ill. 384, is cited. But the facts of that case were that a school fund mortgage had been foreclosed, the city acquired title after foreclosure thereof, and title was fully vested for school purposes before the taxes of 1874 were undertaken to be levied thereon. The attempt to tax school property in this situation was property frustrated. The case has no bearing here.

In *Reid* v. *State,* 74 Ind. 252, the land was sold in February 1862, for delinquent taxes of 1859, 1860, and 1861 and bought in by an individual whose remote grantee sought to maintain the tax title. But the land had already, on January 10, 1860, vested in the State by escheat as the property of an alien resident abroad without local issue. Besides there was no evidence that any taxes were ever lawfully assessed on the land, returned delinquent, or sold at the proper time or place Held: The tax deed could not be upheld. Irrelevant here.

In *State ex rel. Nash* v. *Reed, Treas.,* 47 Idaho 131, 272 P. 1008, and *State* v. *Galyon,* 154 Okl. 204, 7 P. 2d 484, title by sheriff's deed on foreclosure of state mortgages in each case; sustained as against tax lien claims for taxes levied during a previous year. There was no discussion of the questions on which we base our present decision, and the reasoning is inconsistent with the conclusions here reached under our state constitution and statutes. The same is true of the case of *State* v. *Minidoka County,* 50 Idaho 419, 298 P. 366, and its reasoning is rejected for like cause.

The case of *Webster* v. *Board of Regents,* 163 Cal. 705, 126 P. 974, was ruled by a provision then in the constitution of California, since repealed, requiring separate assessment and levy of taxes upon the interests of a mortgagor and mortgagee respectively. Hence it was decided that a tax sale for taxes on the interest of the mortgagor did not carry the State's interest as mortgagee but only the right to pay the mortgage and to redeem in case of foreclosure. We

have no similar question here presented under our constitution and statutes.

It is unnecessary to go further and decide the question raised as to whether the interest of the State in lands taken under foreclosure of a mortgage, not for public use but for resale to realize the money loaned on it, stands on the same basis as property acquired for public use, as for instance, the State Capitol, State Reformatory or Penitentiary, State University, and the like. Many cases, including a decision by Chief Justice Marshall in *Bank of United States* v. *Planters' Bank of Georgia,* 9 Wheat. 904, 6 L. Ed. 244, and *Hughes County* v. *Henry,* supra, hold there is a distinction. There is a serious question about it which we forbear to pass upon at this time, it being unnecessary to our decision.

The trial court erred in its conclusions of law and in its entry of judgment quieting the State's title against the tax liens upon the property in question for the years prior to its acquisition of title by deed from Rindlisbach on December 30, 1936. The judgment of the district court is reversed and the cause remanded with instructions to dismiss the plaintiff's complaint.